**Case No. 25-10947**

---

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**IN THE MATTER OF WHITESTONE UPTOWN TOWER, LLC,**
*Debtor*

---

**WHITESTONE UPTOWN TOWER, LLC,**
*Appellant*
**v.**
**WHITESTONE REIT OPERATING PARTNERSHIP, L.P.**

*Appellee*

---

On appeal from the United States District Court for the
Northern District of Texas, Dallas Division

USDC No. 3:24-cv-02699-x

---

**APPELLANT'S BRIEF**

---

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF INTEREST PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR RULE 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Appellant:**

Whitestone Uptown Tower, LLC

**Counsel for Appellant:**

Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Tel.: (972) 503-4033
joyce@joycelindauer.com

**Appellee:**

Whitestone REIT Operating
Partnership, LP

**Counsel for Appellee:**

John J. Kane
Kane Russell Coleman & Logan, PC
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4261
jkane@krcl.com

Andrew D. Robertson
Kane Russell Coleman & Logan, PC
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4261
drobertson@krcl.com

_/s/ *Joyce W. Lindauer*_____
Joyce W. Lindauer
Attorney of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests the opportunity to present oral arguments as it believes that it will likely assist the Court in identifying the issues on appeal and may clarify any points with respect to the arguments made by Appellant or Appellee in their briefs.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS......................................................i

STATEMENT REGARDING ORAL ARGUMENT................................................ ii

TABLE OF CONTENTS .............................................................................. iii

TABLE OF AUTHORITIES..........................................................................v

JURISDICTIONAL STATEMENT ..................................................................1

ISSUES PRESENTED..................................................................................2

STATEMENT OF THE CASE........................................................................3

STATEMENT OF FACTS .............................................................................4

STANDARD OF REVIEW ............................................................................5

SUMMARY OF ARGUMENT ........................................................................5

ARGUMENT .............................................................................................6

    I.      Did the District Court err in concluding that Appellee Whitestone REIT Operating Partnership, L.P. ("WROP") is statutorily subrogated to the secured lender to Appellant Whitestone Uptown Tower, LLC ("Debtor") under 11 U.S.C. Section 509(a)? ........................................6

    II.    Did the Bankruptcy Court err in concluding that equitable subrogation does not apply? .......................................................................11

    III.   Did the Bankruptcy Court err in finding that the equities of the case support the allowance of WROP's subrogation claim against the Debtor.? .......................................................................................15

CONCLUSION..........................................................................................16

CERTIFICATE OF COMPLIANCE ................................................................17

CERTIFICATE OF SERVICE ...............................................................................17

TABLE OF AUTHORITIES

<u>CASES</u>

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
808 F.3d 1031 (5th Cir. 2015) ...................................................................... 5

*U.S. Bank Nat'l Ass'n ex rel. CW Capital Asset Mgmt. LLC v.
Village at Lakeridge, LLC*, 138 S.Ct. 960 (2018) ......................................... 5

*Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343 (Tex. 1977)......... 7

*Bank of the W. v. PSMD Med. Assocs., P.A.*, No. 02-23-00376-CV,
2024 Tex. App. LEXIS 3060 (Tex. App. May 2, 2024)................................ 7, 13

*423 Colony, Ltd. v. Indep. Ex'rs of the Estate of Kern*,
No. 02-18-00032-CV, 2019 Tex. App. LEXIS 4269,
2019 WL 2223579 (Tex. App—Fort Worth May 23, 2019, pet. Denied)..... 7, 13

*In re Kaiser Steel Corp.*, 89 B.R. 150 (Bankr. D. Colo. 1988)................7, 12-13

*In re Northstar Offshore Grp., LLC*, 628 B.R. 286 (Bankr. S.D. Tex. 2020) ..... 7

*In re Smothers*, 60 B.R. 733 (Bankr. W.D. Ky. 1986).......................................... 7

*Commercial Casualty Ins. Co. vs. Petroleum Pipe Line Co.*,
83 F.2d 412 (10th Cir. 1936) ......................................................................... 7

*In re Corland Corp.,* 967 F.2d 1069 (5th Cir. 1992)........................................8-9

*In re Wingspread Corp.*, 145 B.R. 784 (S.D.N.Y. 1992) ..................................... 9

*Photo Mech. Servs. v. E.I. Dupont De Nemours & Co.
(In re Photo Mech. Servs.)*, 179 B.R. 604 (Bankr. D. Minn. 1995).................. 11

*Buckeye Union Ins. Co. v. Four Star Constr. Co.*,
151 B.R. 817 (Bankr. N.D. Ohio 1993) ........................................................ 11

*CCF, Inc. v. First Nat'l Bank & Trust Co. (In re Slamans)*,
175 Bankr. 762 (N.D. Okla. 1994)............................................................11-12

*Old Republic Sur. Co. v. Richardson (In re Richardson),*
178 Bankr. 19, 1995 Bankr. LEXIS 174, 1995 WL 65543
(Bankr. D.D.C. Feb. 16, 1995) ...................................................................... 11-12

*Bank of America Nat'l Trust & Sav. Ass'n v. Kaiser Steel Corp.*
*(In re Kaiser Steel Corp.)*, 89 Bankr. 150, 152 (Bankr. D. Colo. 1988) ...... 11-12

*McAllister Towing v. Ambassador Factors (In re Topgallant Lines, Inc.),*
154 Bankr. 368 (S.D. Ga. 1993), aff'd, 20 F.3d 1175 (11th Cir. 1994) ....... 11-12

*Berliner Handels-Und Frankfurter Bank v. East Texas Steel*
*Facilities, Inc. (In re East Texas Steel Facilities, Inc.)*,
117 Bankr. 235 (Bankr. N.D. Tex. 1990) ..................................................... 11-14

*In re Spirtos,* 103 Bankr. 240 (Bankr. C.D. Cal. 1989) ................................. 11-12

*Creditor's Comm. v. Massachusetts Dep't of Revenue,*
105 Bankr. 145 (D. Mass. 1989) ................................................................... 11-12

*Cooper v. Cooper (In re Cooper),* 83 Bankr. 544
(Bankr. C.D. Ill. 1988) ................................................................................. 11-12

*In re Mirant Corp.,* No. 03-46590-DML-11,
2005 Bankr. LEXIS 1357 (Bankr. N.D. Tex. July 21, 2005) ............................ 12

*Murray v. Cadle Co.*, 257 S.W.3d 291 (Tex. App. 2008) ................................. 12

*Bennett Truck Transp., LLC v. Williams Bros. Constr.*,
256 S.W.3d 730 (Tex. App. 2008) ...................................................................... 13

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.,*
236 S.W.3d 765 (Tex. 2007) .............................................................................. 13

## STATUTES

28 U.S.C. § 158(a)(1) ............................................................................................ 1

11 U.S.C. Section 509(a) ....................................................................... 7-9, 11-12

**RULES**

Fed. Bankr. R. Pro. 7054 ...................................................................... 2

Fed. Bankr. R. Pro. 9014(c) ................................................................. 2

Fed. R. Civ. Pro. 54 ............................................................................ 2

Fed. R. Bankr. P. 9014 Advisory Committee Note .............................. 2

**Civil Action 25-10947**

_____

## UNITED STATES COURT OF APPEALS FOR
## THE FIFTH CIRCUIT

_____

**WHITESTONE UPTOWN TOWER, LLC,**

*Appellant*

**v.**

**WHITESTONE REIT OPERATING PARTNERSHIP, L.P.**

*Appellee*

_____

On appeal from the United States District Court for the
Northern District of Texas, Dallas Division

USDC No. 3:24-cv-02699-x

_____

**APPELLANT'S BRIEF**

_____

**TO THE HONORABLE UNITED STATES COURT OF APPEALS:**

**COMES NOW,** Whitestone Uptown Tower, LLC, Appellant, and submits this

*Appellant's Brief.*

## <u>JURISDICTIONAL STATEMENT</u>

This Court has jurisdiction under 28 U.S.C. § 158(d)(1) as this is an appeal

from a final order of a United States District Court.

The United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") entered its *Order Overruling the Debtor's Objection to Claim of Whitestone REIT Operating Partnership, L.P. (Claim No.13)* on November 9, 2022.  ROA.25-10947.66.[1], the "Order".  An objection to a claim filed in a bankruptcy case is a contested matter under FED. BANKR. R. PRO 9014[2]. The Order is a final order on a contested matter to which FED. BANKR. R. PRO. 7054 is applicable pursuant to FED. BANKR. R. PRO. 9014(c).  FED. BANKR. R. PRO. 7054 incorporates FED. R. CIV. PRO. 54, which defines a "judgment" as a "decree and any order from which an appeal lies."

The Appellant filed its Notice of Appeal of the Order on October 21, 2024. ROA.25-10947.8. Such appeal was affirmed by the United States District Court for the Northern District of Texas (the "District Court") on August 12, 2025.  ROA.25-10947.2583.  On August 13, 2025, Appellant timely filed its Notice of Appeal to this Court. ROA.25-10947.2587.

## ISSUES PRESENTED

The following issues are before this Court:

---

[1] As required by 5th CIR. R. 30.1.7(c), references to the record on appeal will be by bates number without the leading zeroes, abbreviated as "ROA.25-10947.[page number(s)]".

[2] FED. R. BANKR. P. 9014 advisory committee's note ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter."). See *In re Dernick*, No. 18-32417, 2019 Bankr. LEXIS 2829, at *9 n.44 (Bankr. S.D. Tex. Sep. 10, 2019).

I.      Did the District Court err in concluding that Appellee Whitestone REIT Operating Partnership, L.P. ("WROP") is statutorily subrogated to the secured lender to Appellant Whitestone Uptown Tower, LLC ("Debtor") under 11 U.S.C. Section 509(a)?

II.     Did the Bankruptcy Court err in concluding that equitable subrogation does not apply?

III.    Did the Bankruptcy Court err in finding that the equities of the case support the allowance of WROP's subrogation claim against the Debtor?

## STATEMENT OF THE CASE

On December 1, 2023 (the "Petition Date") Debtor filed herein a voluntary petition for relief in Bankruptcy Case No. 23-32832 (the "Bankruptcy Case") before the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").  ROA.25-10947.117.

On April 9, 2024, WROP filed proof of claim No. 13 in the Bankruptcy Case (the "Claim") in the amount of $13,632,764.25.  ROA.25-10947.335.  On June 19, 2024, the Debtor filed its Objection to the Claim (the "Objection").  ROA.25-10947.396. On July 19, 2024, the Debtor filed its Response to the Objection. ROA.25-10947.1463.  On July 29, 2024, the Debtor filed its Reply to the Response to the Objection.  ROA.25-10947.1506.

The Bankruptcy Court held a hearing on the Objection on October 2, 2024. ROA.25-10947.541.  At the conclusion of the hearing the Bankruptcy Court issued a bench ruling in favor of WROP. ROA.25-10947.688.  On October 18, 2024, the

Bankruptcy Court entered its *Order Overruling Debtor's Objection to Claim of Whitestone REIT Operating Partnership, L.P. (Claim No.13)*.  ROA.25-10947.66.

On October 25, 2024, the Debtor filed its Notice of Appeal.  ROA.1. Such appeal was affirmed by the United States District Court for the Northern District of Texas (the "District Court") on August 12, 2025.  ROA.25-10947.2583.  On August 13, 2025, Appellant timely filed its Notice of Appeal to this Court. ROA.25-10947.2587.

## STATEMENT OF FACTS

On or around September 26, 2013, the Debtor executed a Promissory Note (ROA.25-10947.139) and Loan Agreement (ROA.25-10947.145) with Morgan Stanley Mortgage Capital Holdings LLC, later succeeded by RSS MSBAM2013-C13 – TX WUT, LLC  (the "Lender"), whereby Lender agreed to lend $16,450,000 to the Debtor secured by the Debtor's real property (the "Loan").

On the same date, WROP entered into a Guaranty of Recourse Obligations of Borrower in which WROP guaranteed to Lender the payment of the Debtor's obligations under the Loan (ROA.25-10947.341, the "Guaranty").  The Guaranty is an absolute and unconditional guaranty of payment.  ROA.25-10947.338, para. 4, ROA.25-10947.345, para. 13.

On December 4, 2023, after the filing of the Bankruptcy Case, WROP made a payment on the Guaranty to the Lender in the amount of $13,632,764.25. ROA.25-

10947.338, para. 5. This was a partial payment only, as the Lender claimed it was owed $21,401,414.35 on the Petition Date (ROA.25-10947.136), less offsets for the Debtor's reserve account, escrow account and suspense account in the total amount of $2,673,343.33, for a net amount owed of $18,728,071.02. ROA.25-10947.138. WROP alleges that its partial payment to Lender allows it to "stand in the shoes" of the Lender as a secured creditor. ROA.25-10947.339.

## STANDARD OF REVIEW

When reviewing a lower court's decision following a bench trial, appellate courts apply a standard of clear error to the court's findings of fact and review legal issues *de novo*.[3]  For mixed questions of law and fact, the standard depends on whether it is predominantly factual or legal.[4]

## SUMMARY OF ARGUMENT

The Bankruptcy Court ruled, and the District Court affirmed, that a) WROP is statutorily subrogated to the secured claim of the Lender under 11 U.S.C. Section 509(a), b) equitable subrogation standards under federal or state common law do not apply[5], and c) the balance of equities in the case favor WROP.

---

[3] *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015).

[4] *U.S. Bank Nat'l Ass'n ex rel. CW Capital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S.Ct. 960 (2018).

[5] As determined by the Bankruptcy Court only; the District Court did not consider this issue.

Appellant Debtor contends that a) WROP is not entitled to statutory subrogation under Section 509 because WROP was primarily liable on the debt and thus when it paid part of the claim it did so voluntarily and for its own benefit, b) equitable subrogation is applicable and WROP is not entitled to equitable subrogation because it paid only part of the Lender's claim, made the payment voluntarily, and was primarily liable, and c) the equities in the case favor the Debtor due to the bad acts of WROP.

## ARGUMENT

**I.** **The District Court erred in concluding that Appellee Whitestone REIT Operating Partnership, L.P. ("WROP") is statutorily subrogated to the Lender under 11 U.S.C. Section 509(a) because, as the unconditional guarantor on the Loan, WROP was primarily liable rather than secondarily liable.**

WROP was primarily liable on the debt because it executed an unconditional guaranty of payment. Section 13 of the guaranty agreement attached to the WROP POC states as follows:

> This is a guaranty of payment and not of collection and upon the Guaranteed Recourse Obligations of Borrower being incurred by Lender or, to the extent that any event described in Section 11.22 of the Loan Agreement giving rise to personal liability of the Borrower has occurred, upon any default of Borrower under the Note, the Loan Agreement, the Security Instrument or the other Loan Documents, Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the mortgaged property or other collateral for the Loan.

ROA.25-10947.345.

As explained by the Texas Supreme Court, an unconditional guarantee renders the guarantor primarily liable:

> There are two types of guaranties: payment (or unconditional) guaranties and collection (or conditional) guaranties. *Id.* The primary difference is whether the guaranty requires the creditor to pursue the principal debtor before it pursues the guarantor for collection of the debt. *Id.* A guaranty of payment does not require the creditor to first pursue the principal debtor. *Id.* Instead, "[a] guarantor of payment is primarily liable; he waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty." *Id.* (quoting *Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex. 1977)).

*Bank of the W. v. PSMD Med. Assocs., P.A.*, No. 02-23-00376-CV, 2024 Tex. App. LEXIS 3060, at *4-5 (Tex. App. May 2, 2024).[6]

The consequence of WROP's primary obligation as an unconditional guarantor is that it cannot "step into the shoes" of the Lender as a subrogee under 11 U.S.C. Section 509(a). "When the issuer pays *its own* debt, it cannot then step into the shoes of the creditor to seek subrogation, reimbursement or contribution from the debtor." [7]

---

[6] *See also 423 Colony, Ltd. v. Indep. Ex'rs of the Estate of Kern*, No. 02-18-00032-CV, 2019 Tex. App. LEXIS 4269, 2019 WL 2223579, at *2 (Tex. App—Fort Worth May 23, 2019, pet. denied) (mem. op.).

[7] *In re Kaiser Steel Corp.*, 89 B.R. 150, 153 (Bankr. D. Colo. 1988); See also *In re Northstar Offshore Grp., LLC*, 628 B.R. 286, 306 (Bankr. S.D. Tex. 2020) (citing *In re Smothers*, 60 B.R. 733, 735 (Bankr. W.D. Ky. 1986) ("As a general rule, subrogation is not available to a party discharging a debt in the performance of his own obligation. *Commercial Casualty Ins. Co. vs. Petroleum Pipe Line Co.,* 83 F.2d 412, 414 (10th Cir. 1936) (citing decisions from California, Kansas, Missouri, Oklahoma, Pennsylvania, and Tennessee). A right to subrogation exists only

In its bench ruling on the Objection to Claim, the Bankruptcy Court[8] found that WROP as guarantor was secondarily, not primarily, liable with the Debtor on the Loan. ROA.25-10947.691, l. 6-11. The Bankruptcy Court stated that "WROP as guarantor was secondarily liable with the debtor and had no obligation to pay the amounts due and owing under the note, but for the debtor's default." ROA.619, l. 6-11. The Court cited the Fifth Circuit case of *In re Corland Corp.*[9] for this proposition, in which the Fifth Circuit stated that "Section 509(a) provides that guarantors become subrogated to the rights of the creditors they pay to the extent of their payments."[10] But this is merely a restatement of the statute and does not account for the fact that the *Corland* case is distinguishable from the present case on its facts - it is apparent in *Corland* that the guarantor paid the lender's claim in full.[11]

---

when the subrogee pays or discharges a debt for which another is primarily liable … One cannot seek subrogation for paying one's own debts." Id.)

[8] The District Court found it immaterial whether WROP was primarily or secondarily liable on the debt, stating "Debtor's argument as to primary or secondary is distinction without a difference," which ignores the overwhelming amount of case law available on the subject. For that reason, we have briefed this Court on the Bankruptcy Court's reasoning in finding WROP to be secondarily, and not primarily, liable on the debt and why that was in error.

[9] 967 F.2d 1069 (5th Cir. 1992).

[10] Id. at 1077.

[11] *In re Corland Corp.*, 967 F.2d 1069, 1077 (5th Cir. 1992) ("The debtor (Corland), in turn, owed the Bank a debt under the Corland Note. Stephenson *paid the debtor's debt to the Bank* pursuant to his guaranty of the Corland Note. Section 509(a) provides that guarantors become subrogated to the rights of the creditors they pay to the extent of their payments.") (emphasis added).

APPELLANT'S BRIEF                                                                Page 8

Here, WROP made only a partial payment.[12]  The *Corland* court endorsed the proposition that the statute requires full payment by the guarantor for a right of subrogation to exist: "Indeed, where, as here, a guarantor pays a debtor's creditor *in full* …"[13].  From this it is clear that the *Corland* case does not support WROP's position and is more accurately read to support the Debtor's argument that Section 509(a) requires full payment of the debt.  At best the Fifth Circuit in *Corland* was neutral on the issue and it is distinguishable from the circumstances at hand because the guarantor paid in full in that case, while WROP made only a partial payment.

The Bankruptcy Court found the case of *In re Wingspread Corp.*[14] to be convincing on the issue of primary liability of an unconditional guarantor (ROA.25-10947.691), particularly the court's opinion that "the relevant question in the subrogation context is not simply whether the party was directly liable, but rather whether its payment was used to satisfy *another's* obligation".[15]  But this passage ignores the fact that an unconditional guarantor is co-liable in the first place, which renders its payment as one on its *own* obligation.  If the premise is that the payor is

---

[12] See Statement of Facts above, para. 11.

[13] *In re Corland Corp.*, at 1078 (emphasis added).

[14] 145 B.R. 784 (S.D.N.Y. 1992).

[15] Id. at 790.

"directly liable", what conclusion can be reached other than the payment was made on that direct liability?

This appeal presents an existing and clear conflict between Texas law and Federal law regarding an important issue that needs to be addressed by this Court. Clearly bankruptcy law can be argued to grant greater relief than would be found in state court with the same set of facts. This Court should harmonize this issue by ruling that the Bankruptcy Code was not intended to provide greater relief to co-debtor claiming a right of subrogation than is found under applicable state law.

WROP was primarily liable not only due to its status as unconditional guarantor, but also because it sought to pay the Lender as the Debtor, the borrower on the Loan. In conjunction with its partial payment of the Loan, WROP executed a letter agreement with the Lender indicating that its payment was being made in its capacity as guarantor *and* as the Debtor (in its purported capacity as its Manager). ROA.25-10947.540. The Bankruptcy Court found, and the District Court agreed, this to be insignificant because the Debtor had removed WROP as Manager a few days earlier (ROA.25-10947.692, l. 1-5), but the plain meaning and intent of WROP's signature as Manager was to pay the Loan as the primary obligor. Dave Holeman, chief executive officer of Whitestone REIT, the general partner of

WROP[16], testified that by signing the letter agreement as the Manager of the Debtor, WROP fully intended to bind the Debtor as the borrower.[17]

Because WROP was primarily liable as an unconditional guarantor and as the representative of the Debtor, it made the payment to the Lender on its own obligation for its own purposes, and the District Court erred as a matter of law in concluding otherwise.

**II.    The Bankruptcy Court erred in concluding that equitable subrogation does not apply.  If equitable subrogation standards are properly applied, WROP cannot be subrogated to the rights of the secured lender because WROP a) did not pay the full loan, b) made the partial payment voluntarily, and c) was primarily liable on the loan.**

In addition to statutory subrogation under 11 U.S.C. Sec. 509, subrogation may be available as an equitable remedy.  The Bankruptcy Court noted that the case law is divided on the question of whether equitable subrogation is applicable in bankruptcy cases and chose to answer this question in the negative.[18]  But the issue

---

[16] ROA.25-10947.612, l. 8-99.

[17] ROA.25-10947.596, l. 8-23.

[18] "Some courts have held that since the codification of Section 509, subrogation is governed exclusively by the Bankruptcy Code, while other courts have held that Section 509 is not the exclusive authority for subrogation in bankruptcy proceedings and that equitable subrogation under state law is still an alternative.  Still other courts attempt to shoehorn common law criteria for equitable subrogation into their 509 analysis.  And, yet, there are other courts that still consider subrogation of a co-obligor's claim without even referring to 509.  The most recent trend in cases is for courts to recognize equitable subrogation as an available remedy in bankruptcy courts and to treat subrogation under 509 equitable subrogation under state law separately without adding any requirements to subrogation under Section 509.  And that is what this Court will follow." ROA.25-10947.689, l. 14.

APPELLANT'S BRIEF                                                                                    Page 11

is far from settled and many cases, both state and federal, go in the opposite direction[19]. Notably, the Fifth Circuit has not addressed the issue. The District Court refused to take a stance on the issue, finding that since WROP was entitled to statutory subrogation, it need not reach the equitable subrogation argument. The two bankruptcy courts in Texas to address the issue, both in the Northern District of Texas, have used equitable subrogation standards from Texas and federal common law.[20]

---

[19] See *Photo Mech. Servs. v. E.I. Dupont De Nemours & Co. (In re Photo Mech. Servs.)*, 179 B.R. 604, 619 (Bankr. D. Minn. 1995) ("Only recently have courts begun to consider whether § 509 of the Code mandates the application of equitable subrogation. Yet, to date, there is little uniformity on the issue. For example, some courts do not distinguish between equitable subrogation and § 509. These courts simply adopt equitable subrogation as the test of § 509. See, e.g., *Buckeye Union Ins. Co. v. Four Star Constr. Co. (In re Four Star Constr. Co.), Buckeye Union Ins. Co. v. Four Star Constr. Co.*, 151 B.R. 817 (Bankr. N.D. Ohio 1993). Other courts have held that a party asserting subrogation under § 509 must satisfy the requirements of § 509 in addition to the equitable subrogation test. See, e.g., *CCF, Inc. v. First Nat'l Bank & Trust Co. (In re Slamans)*, 175 Bankr. 762, 765 (N.D. Okla. 1994); *Old Republic Sur. Co. v. Richardson* (In re Richardson), 178 Bankr. 19, 1995 Bankr. LEXIS 174, 1995 WL 65543 (Bankr. D.D.C. Feb. 16, 1995); *Bank of America Nat'l Trust & Sav. Ass'n v. Kaiser Steel Corp. (In re Kaiser Steel Corp.)*, 89 Bankr. 150, 152 (Bankr. D. Colo. 1988). Another line of cases reasons that § 509 provides an additional, but not exclusive, remedy in bankruptcy. In other words, a creditor need not satisfy both tests, but need only to satisfy § 509 or the equitable subrogation test. See, e.g., *McAllister Towing v. Ambassador Factors (In re Topgallant Lines, Inc.),* 154 Bankr. 368, 382 (S.D. Ga. 1993), aff'd, 20 F.3d 1175 (11th Cir. 1994) (stating that § 509 does not exist in a vacuum*); Berliner Handels-Und Frankfurter Bank v. East Texas Steel Facilities, Inc. (In re East Texas Steel Facilities, Inc.)*, 117 Bankr. 235, 241 (Bankr. N.D. Tex. 1990) (applying both tests without explanation); *In re Spirtos,* 103 Bankr. 240, 245 (Bankr. C.D. Cal. 1989). Finally, a handful of courts have held that, given the codification of subrogation in § 509, equitable subrogation does not apply. Rather, to subrogate a claim in bankruptcy, one need only satisfy the elements set forth in § 509. *Creditor's Comm. v. Massachusetts Dep't of Revenue,* 105 Bankr. 145, 154 (D. Mass. 1989); *Cooper v. Cooper (In re Cooper),* 83 Bankr. 544, 546 (Bankr. C.D. Ill. 1988)."

[20] *In re Mirant Corp.,* No. 03-46590-DML-11, 2005 Bankr. LEXIS 1357 (Bankr. N.D. Tex. July 21, 2005) (recognizing that the meaning of Section 509 is ambiguous and allowing that state law may provide an alternative means of achieving equitable subrogation) ("The court agrees that

Texas courts characterize equitable subrogation as a "legal fiction" whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the primarily liable party.[21] There are two key elements to equitable subrogation: (1) the person whose debt was paid was primarily liable on the debt, and (2) the claimant paid the debt involuntarily. *Id.* The party claiming entitlement to equitable subrogation must prove that it acted involuntarily in paying a debt and that the debt was one on which the other party is primarily liable.[22] Similarly, under the authority of this Court and other federal courts, equitable subrogation requires the following elements: (1) the codebtor must have made payment to protect its own interests; (2) the codebtor must have not been a volunteer; (3) the payment must satisfy a debt for which the codebtor was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others. *Berliner Handels-Und Frank-Furter Bank v. E. Tex. Steel Facilities, Inc. (In re E. Tex. Steel Facilities, Inc.)*, 2000 U.S. Dist. LEXIS 4106, *9 (N.D. Tex. Mar. 30, 2000) (adopting the analysis of *In re Kaiser*

---

Code section 509's meaning is at best opaque." Id. at 16); *Berliner Handels-Und Frankfurter Bank v. East Texas Steel Facilities, Inc. (In re East Texas Steel Facilities, Inc.)*, 117 Bankr. 235, 241 (Bankr. N.D. Tex. 1990) (applying both Section 509 and equitable subrogation standards).

[21] *Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex. App. 2008).

[22] *Bennett Truck Transp., LLC v. Williams Bros. Constr.*, 256 S.W.3d 730, 733-34 (Tex. App. 2008), citing *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex. 2007).

*Steel Corp.*, 89 Bankr. 150, 152 (Bankr. D. Colo. 1988)). *See also CCF, Inc. v. First Nat'l Bank & Tr. Co. (In re Slamans)*, 69 F.3d 468, 472 n.2 (10th Cir. 1995).

As discussed above, in Texas there is no doubt an unconditional guarantor like WROP is primarily liable to the lender.[23] And as also established above, WROP made only partial payment on the Loan.[24] Under the *Berliner* case cited above, decided in the Northern District, these factors alone disqualify WROP from subrogation under equitable standards. But, in addition, WROP made its payment on the Loan voluntarily. At the time of the payment there had been no demand by the Lender for payment on WROP's guaranty and WROP did not seek the consent of the Debtor or even inform the Debtor of the payment. ROA.25-10947.632, l. 19 to ROA.25-10947.633, l. 20. Dave Holeman, chief executive officer of Whitestone REIT, the general partner of WROP[25], testified that WROP chose to make the payment to protect its own interests.[26]

---

[23] *Bank of the W. v. PSMD Med. Assocs., P.A.*, No. 02-23-00376-CV, 2024 Tex. App. LEXIS 3060, at *4-5 (Tex. App. May 2, 2024); *423 Colony, Ltd. v. Indep. Ex'rs of the Estate of Kern*, No. 02-18-00032-CV, 2019 Tex. App. LEXIS 4269, 2019 WL 2223579, at *2 (Tex. App—Fort Worth May 23, 2019, pet. denied) (mem. op.).

[24] See Statement of Facts above.

[25] ROA.25-10947.612, l. 8-9.

[26] "So in order to preserve millions of dollars of equity, it was our choice to make the payment." ROA.25-10947.612, l. 8-9.

**III.   The Bankruptcy Court erred in finding that the equities of the case support the allowance of WROP's subrogation claim against the Debtor.**

The Bankruptcy Court found that the equities of the case favored allowance of WROP's subrogation claim because WROP partially paid the Loan.  ROA.620, l. 21.  But the balance of equities does not support WROP's claim because WROP itself acted inequitably.  Among WROP's bad acts are: a) WROP failed to inform the Debtor that it intended to pay the subject debt, and never received the Debtor's consent to do so, thus undercutting and jeopardizing the Debtor's own negotiations with the Lender[27]; b) in July 2022, WROP abruptly abandoned its position as manager of the Debtor and ceased all managerial activities, causing much damage to operations.  ROA.25-10947.621, l. 19 to ROA.25-10947.622, l. 10; ROA.25-10947.625, l. 13-21; c) at the same time, WROP failed or refused to provide historical financial records to the Debtor.  ROA.25-10947.630, l. 15-23; d) after abandoning its role of manager, WROP nevertheless purported to act in such capacity when it offered to and did tender payment on the subject debt obligation as the manager, ostensibly as a party bearing responsibility for same.  ROA.25-10947.537, ROA.25-10947.540, and ROA.25-10947.158, l. 20 to ROA.25-10947.159, l. 5; and e) when WROP made its partial payment on the Loan it attempted to complete its settlement by using funds belonging to the Debtor that

---

[27] ROA.25-10947.632, l. 19 to 633, l. 20.

were being held by the Lender in reserve, despite having no authority to do so. ROA.25-10947.164, l. 2-14; ROA.25-10947.616, l. 8; ROA.25-10947.619, l. 6-13.

## CONCLUSION

For the reasons stated herein, the District Court erred in ruling that WROP is subrogated to the rights of the Lender as a secured claimant in the amount of $13,632,764.25. Appellant Whitestone Uptown Tower, LLC requests this Court to reverse the Order in all respects and, if necessary, remand to the Bankruptcy Court for further proceedings.

Dated:      November 24, 2025.

Respectfully submitted,

/s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 4,045 words. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-font Times New Roman.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 24, 2025, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the Appellee via counsel listed below.

**John J. Kane**
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, Texas 75202
Email: jkane@krcl.com

**Andrew D. Roberton**
Kane Russell Coleman Logan PC
901 Main Street, Suite 5200
Dallas, Texas 75202
Email: drobertson@krcl.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer