No. 25–10947

# In the United States Court of Appeals for the Fifth Circuit

IN THE MATTER OF WHITESTONE UPTOWN TOWER, L.L.C., DEBTOR

WHITESTONE UPTOWN TOWER, L.L.C., *Appellant*

v.

WHITESTONE REIT OPERATING PARTNERSHIP, L.P., *Appellee*

On Appeal from the United States District Court
for the Northern District of Texas, No. 3:24–CV–2699–X

### APPELLEE'S BRIEF

**John J. Kane**
Texas Bar No. 24066794
jkane@krcl.com
**Andrew D. Robertson**
Texas Bar No. 24090845
drobertson@krcl.com

KANE RUSSELL COLEMAN LOGAN PC
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel: 214.777.4261
Fax: 214.777.4299

*Counsel for Appellee Whitestone REIT Operating Partnership, L.P.*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Appellant**: | Whitestone Uptown Tower, LLC |
| **Counsel for Appellant:** | Joyce W. Lindauer, JOYCE W LINDAUER ATTORNEY PLLC |
| **Appellee**: | Whitestone REIT Operating Partnership, L.P. |
| **Counsel for Appellee:** | John J. Kane and Andrew D. Robertson, KANE RUSSELL COLEMAN LOGAN PC |
| **Debtor:** | Appellant (see above) |
| **Counsel for Debtor:** | Counsel for Appellant (see above) |

s/ Andrew Robertson
Andrew D. Robertson
*Counsel for Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Whitestone Uptown Tower, LLC's (**Debtor** or **Appellant**) request for oral argument fails to comply with Rule 28.2.3 because Appellant does not give any particular reason as to "why oral argument would be helpful" beyond a cursory statement that oral argument would "likely assist the Court in identifying the issues on appeal and may clarify any points with respect to the arguments made by Appellant or Appellee in their briefs." *See* 5TH CIR. R. 28.2.3; FED. R. APP. P. 34(a)(1).

Appellee Whitestone REIT Operating Partnership, L.P. (**WROP** or **Appellee**) does not believe that oral argument is necessary in this case because: (1) **this Court no longer has subject matter jurisdiction, as Appellant has lost standing to raise the arguments made by Appellant's Brief**; (2) the dispositive issues on appeal are governed by, and have been authoritatively decided by, well-established law; (2) the facts and legal arguments addressing the dispositive issues on appeal are adequately presented in the briefs and record; and (3) based on the arguments raised by Appellant's Brief, this appeal is frivolous and oral argument is unlikely to aid this Court's decision–making process. FED. R. APP. P. 34(a)(2).

If the Court should grant Appellant's request for oral argument, then Appellee alternatively and respectfully requests permission to participate in any oral argument that may be set by the Court.

## TABLE OF CONTENTS

Certificate of Interested Persons ................................................................. 2

Statement Regarding Oral Argument .......................................................... 3

Table of Contents ........................................................................................ 5

Table of Authorities .................................................................................... 7

Jurisdictional Statement ............................................................................ 11

Statement of the Issues .............................................................................. 12

Statement of the Case ................................................................................ 13

A.     The Note and Guaranty. ................................................................ 13

B.     The Formation of the Partnership and management of Appellant.
       ....................................................................................................... 14

C.     Notice of Default, pending foreclosure, and $5.2 million
       discount. ......................................................................................... 17

D.     Appellant covertly replaces WROP as manager, files
       bankruptcy, engages in fruitless and damaging litigation with
       Lender, obtains a worse settlement, which WROP funds, and
       seeks unjust enrichment through the disallowance of WROP's
       claim. .............................................................................................. 21

E.     The District Court correctly affirms the entirety of the
       Bankruptcy Court's ruling and Appellant seeks further review
       from this Court based on the same arguments. ............................ 24

F.     Subsequent developments in the Bankruptcy Court moot this
       appeal. ............................................................................................ 25

Summary of the Argument ......................................................................... 26

Standard of Review .................................................................................... 29

Argument .................................................................................................... 30

I.     This Court lacks subject matter jurisdiction because
       Appellant no longer has standing to prosecute this
       appeal. ............................................................................................ 30

II.    In the alternative, the Bankruptcy Court correctly held that WROP is entitled to statutory subrogation under Bankruptcy Code section 509. ............................................................ 34

      A.    WROP's guaranty did not make it the primary obligor of Lender's claim against Appellant under the loan documents. .................................................................................... 35

      B.    WROP's is entitled to subrogation for its Settlement Payment, even if the Settlement Payment did not satisfy the entirety of Lender's claim against Appellant. ......................... 44

      C.    There is no element of intent in section 509, and Appellant's argument to the contrary is in error.......................... 46

III.   In the further alternative, WROP is entitled to equitable subrogation. .................................................................................... 49

      A.    Section 509 is not an exclusive subrogation remedy.................... 49

      B.    WROP satisfies both elements of equitable subrogation. ........... 52

          1.    Equitable subrogation under Texas law has only two elements................................................................................ 52

          2.    Appellant, not WROP, was primarily liable on the Note....................................................................................... 53

          3.    WROP paid the debt involuntarily. ....................................... 57

      C.    The balance of equities favors WROP's equitable subrogation claim. ............................................................................ 60

Conclusion.............................................................................................. 63

Certificate of Service ........................................................................... 65

Certificate of Compliance ................................................................... 66

## TABLE OF AUTHORITIES

**Cases**

*423 Colony, Ltd. v. Indep. Executors of Estate of Kern*,
No. 02–18–00032–CV, 2019 WL 2223579 (Tex. App.—
Fort Worth May 23, 2019, pet. denied)............................................................54

*Argonaut Ins. Co. v. Rio Marine, Inc.*,
477 F. Supp. 3d 576 (S.D. Tex. 2020) ....................................................... 43, 58

*Bank of the West. v. PSMD Medical Associates, P.A.*,
No. 02-23-00376-CV, 2024 WL 1924603 (Tex. App.—
Fort Worth May 2, 2024, no pet.)....................................................... 40, 41, 43

*BBVA USA v. Francis*,
642 S.W.3d 932 (Tex. App.—Houston [14th Dist.]
2022, no pet.) ...................................................................................... 53, 54, 57

*Caito v. United California Bank*,
576 P.2d 466 (Cal. 1978) ....................................................................................53

*Crimmins v. Lowry*,
691 S.W.2d 582, 585 (Tex. 1985) ........................................................................51

*Ford v. Darwin*,
767 S.W.2d 851 (Tex. App.—Dallas 1989, writ denied) ..............................54

*Frymire Engineering Co. v. Jomar Int'l, Ltd.*,
259 S.W.3d 140 (Tex. 2008) ...................................................................... 57, 58

*Fulton v. Edge*, J.D.,
435 S.W.2d 263 (Tex. App.—Waco 1968, writ ref'd n.r.e.) ................... 55, 57

*In re Coho Energy, Inc.*,
395 F.3d 198 (5th Cir. 2004) ...........................................................................30

*In re Cornmesser's, Inc.*,
264 B.R. 159 (Bankr. W.D. Pa. 2001)................................................... 39, 40, 45

*In re Dennis*,
330 F.3d 696 (5th Cir. 2003) ......................................................30

*In re East Texas Steel Facilities, Inc.*,
117 B.R. 235 (Bankr. N.D. Tex. 1990)................................ 53, 55, 57

*In re Fiesole Trading Corp.*,
315 B.R. 198 (Bankr. D. Mass. 2004) ................................ 36, 40, 45

*In re Fresh Acquisitions, LLC*,
Case No. 21-30721, 2024 WL 2232432 (Bankr. N.D. Tex.
May 16, 2024)......................................................................35

*In re Highland Cap. Mgmt.*,
57 F.4th 494 (5th Cir. 2023) ....................................................29

*In re Jones Truck Lines, Inc.*,
196 B.R. 123 (Bankr. W.D. Ark. 1996),
*aff'd* 133 F.3d 922 (8th Cir. 1997) ...........................................39

*In re JPG Renewables, L.L.C.*,
No. 25–20021, 2026 WL 75906 (5th Cir. Jan. 9, 2026) ............. 29, 30

*In re Kaiser Steel Corp.*,
89 B.R. 150 (Bankr. D. Colo. 1988) ...........................................53

*In re Kizzee-Jordan*,
626 F.3d 239 (5th Cir. 2010) ....................................................51

*In re LTC Holdings, Inc.*,
10 F.4th 177 (3d Cir. 2021) ................................................ 36, 45

*In re May*,
No. 05-10521, 2006 WL 4458360 (Bankr. N.D. Ohio
Aug. 14, 2006), *aff'd*, 368 B.R. 85 (B.A.P. 6th Cir. 2007) ........ 38, 39

*In re McDaniel*,
70 F.3d 841 (5th Cir. 1995) .....................................................61

*In re Northstar Offshore Group, LLC*,
628 B.R. 286 (Bankr. S.D. Tex. 2020)..................................... 36, 37

*In re Perry*,
  345 F.3d 303 (5th Cir. 2003) ........................................................................28

*In re Shavers*,
  418 B.R. 589 (Bankr. S.D. Miss. 2009) ................................................ 49, 50, 51

*In re Wingspread Corp.*
  116 B.R. 915 (Bankr. S.D.N.Y. 1990) ................................................... 41, 42, 43

*Matter of Corland Corp.*,
  967 F.2d 1069 (5th Cir. 1992) ............................................................ 35, 44, 45

*Matter of Fields*,
  926 F.2d 501 (5th Cir. 1991) ........................................................................51

*Matter of JFK Capital Holdings, L.L.C.*,
  880 F.3d 747 (5th Cir. 2018) ........................................................................30

*Moler v. Wells*,
  18 F.4th 162 (5th Cir. 2021) ................................................................... 11, 30

*Murray v. Cadle Co.*,
  257 S.W.3d 291 (Tex. App.—Dallas 2008) ................................... 43, 52, 57, 60

*Northwest Otolaryngology Associates v. Mobilease, Inc.*,
  786 S.W.2d 399 (Tex. App.—Texarkana Jan. 23, 1990,
  writ denied) ..................................................................................... 56, 57

*Nowlin v. Peake (In re Nowlin)*,
  576 F.3d 258 (5th Cir. 2009) ........................................................................45

*Perez v. Peake*,
  373 B.R. 468 (S.D. Tex. 2007) ......................................................................61

*Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*,
  851 F.3d 530 (5th Cir. 2017) ................................................................... 11, 30

## Statutes & Rules

11 U.S.C. § 509 ................................................................................... *passim*

5TH CIR. R. 28 .................................................................................................2, 3

5TH CIR. R. 32 ....................................................................................................66

FED. R. APP. P. 25 ..............................................................................................65

FED. R. APP. P. 32 ..............................................................................................66

FED. R. APP. P. 34 ................................................................................................3

FED. R. BANKR. P. 8013 ......................................................................................61

FED. R. BANKR. P. 9019 .................................................................................. *passim*

## Other Authority

4 COLLIER ON BANKRUPTCY (16TH ED.) ........................................................ 37, 39

## JURISDICTIONAL STATEMENT

This Court currently lacks subject matter jurisdiction over this appeal because, during the pendency of this appeal, developments in the Bankruptcy Court[1] have deprived Appellant of any standing to make the arguments raised by Appellant's Brief.

"Because [this Court] may not proceed without requisite jurisdiction, it is incumbent upon [the Court] to constantly examine the basis of jurisdiction[.]" *Moler v. Wells*, 18 F.4th 162, 166 (5th Cir. 2021). "A lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 534 (5th Cir. 2017) (internal quotation omitted).

Appellee's jurisdictional attack based on Appellant's loss of standing is set forth in its first Argument point below.[2]

---

[1] United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Hon. Michelle V. Larson, No. 23–32832 (**Bankruptcy Court**).

[2] *Infra*, ARGUMENT, Part I.

## STATEMENT OF THE ISSUES

1. Does this Court lack subject matter jurisdiction due to Appellant's loss of standing during the pendency of this appeal?

2. In the alternative, if this Court still has subject matter jurisdiction, did the District Court correctly affirm the Bankruptcy Court's holding overruling Appellant's objection to WROP's subrogation claim under 11 U.S.C. § 509 when WROP, as the guarantor on Appellant's debt, negotiated and paid a favorable settlement to satisfy Appellant's debt (and, as a result, WROP's related guaranty obligation), and in doing so preserved equity in the property securing Appellant's debt?

3. In the further alternative, did the District Court correctly hold that equitable subrogation under Texas law alternatively supports the Bankruptcy Court's order if section 509 does not provide an exclusive subrogation remedy in bankruptcy proceedings and WROP satisfied each of the elements for equitable subrogation while also showing that the balance of equities weighed in its favor?

## STATEMENT OF THE CASE

### A.    The Note and Guaranty.

On or around September 26, 2013, Appellant entered into that certain Promissory Note (as amended, restated, replaced, supplemented, or otherwise modified, the **Note**)[3] and Loan Agreement (as amended, restated, replaced, supplemented, or otherwise modified, the **Loan Agreement**)[4] with Morgan Stanley Mortgage Capital Holdings (**Morgan Stanley**) to borrow $16,450,000 (the **Loan**). The Loan, evidenced by the Note, matured on October 1, 2023.[5]

The Loan was secured by that certain Deed of Trust, Assignment of Leases and Rents, and Security Agreement (as amended, restated, replaced, supplemented, or otherwise modified, the **Security Instrument**)[6] (the Loan Agreement, Note, and Security Instrument are collectively referred to herein as the **Loan Documents**) on Appellant's twelve-story, 253,000 square-foot office tower located at 4144 North Central Expressway in Dallas, Texas (**Uptown Tower** or the **Property**).

---

[3] ROA.000072-000077.

[4] ROA.001416–001535.

[5] ROA.001433, ROA.000507 at 39:01-05.

[6] ROA.000198–000251.

That same day, WROP entered into a Guaranty of Recourse Obligations of Borrower in which WROP guaranteed the payment of Appellant's obligations under the Loan Documents (the **Guaranty**).[7]

It is undisputed that the Loan was subsequently assigned or otherwise transferred and was held by RSSMSBAM2013-C13-TX WUT, LLC (**RSS**) and serviced by Rialto Capital Advisors, LLC (**Rialto** and together with RSS, the **Lender**) at the time of the Petition Date and during the time period relevant to this appeal.[8]

### B. The Formation of the Partnership and management of Appellant.

In 2016, WROP and Pillarstone Capital REIT (**Pillarstone**) formed Pillarstone Capital REIT Operating Partnership, LP (the **Partnership**).[9] On December 8, 2016, WROP, Pillarstone, and the Partnership entered into an agreement whereby WROP contributed 14 commercial properties in Texas

---

[7] ROA.000274-000283.

[8] ROA.000069-000070; *see* Appellant's Br. at 4.

[9] Pillarstone [Case No. 24-30657] and Partnership [Case No. 24-30656] separately filed for bankruptcy and their cases are jointly administered with the following debtors under Case No. 24-30653 (the "**Affiliate Bankruptcy Cases**"): Whitestone Industrial-Office, LLC (**Whitestone Industrial**) [Case No. 24-30653]; Whitestone Offices, LLC (**Whitestone Offices**) [Case No. 2430654]; and Whitestone CP Woodland Ph 2 LLC (**Whitestone CP**) [Case No. 24-30655].

to the Partnership, including Uptown Tower.[10]  WROP is a limited partner in the Partnership and Pillarstone is the general partner.[11]

After the formation of the Partnership, WROP agreed to an amendment of Appellant's *Limited Liability Company Agreement of Whitestone Uptown Tower, LLC* (the **Company Agreement** as amended from time to time), to reflect the contribution of Uptown Tower to the Partnership.[12] That *First Amendment* to the Company Agreement replaced WROP as Member with the Partnership but, importantly, named WROP as *manager* of Appellant (the **First Amendment**).[13] The naming of WROP as a non-member manager was critical to WROP's contribution of Uptown Tower to the Partnership.[14]

Wells Fargo, the Master Servicer of the Note at the time, *required* that Whitestone REIT or WROP remain a non-member manager of Appellant for

---

[10] ROA.001540-001541.

[11] The Partnership owned and managed certain real estate, including Uptown Tower, for the benefit of the partners pursuant to the Amended and Restated Agreement of Limited Partnership of the Pillarstone Capital REIT Operating Partnership L.P. (the **LPA**). The LPA governs the relationship between WROP and Pillarstone. Prior to the Petition Date, WROP owned about 81.4% of interests in the Partnership and Pillarstone owned about 18.6% of the Partnership interests. WROP redeemed all but one of its shares of the Partnership on January 25, 2024. *See* ROA.000506 at 38:08–18, ROA.000505 at 37:18–21, ROA.001545.

[12] ROA.001536-001539.

[13] *Id.*

[14] *See* ROA.001609-001611, ROA.001540-001541.

the transfer to be permitted under the loan documents. Scott Rudd, an attorney with Alston and Bird who represented Wells Fargo in that capacity at the time expressly stated via email dated November 30, 2016:

> If Whitestone REIT or the Whitestone Operating Partnership were either made a non-member manager of Borrower [Appellant] in the amendment to the Borrower's LLC agreement or was contracted by Pillarstone Capital REIT Operating Partnership to manage the Borrower on its behalf the transfer would be permitted under the loan documents.[15]

Thereafter, WROP served as Appellant's non-member manager until it was removed as manager by Appellant on November 30, 2023.[16] Appellant did not inform WROP that WROP had been replaced as Appellant's manager until December 11, 2023, when Appellant's counsel informed WROP of this fact by letter (the **Second Amendment Letter**),[17] well after Appellant filed its bankruptcy petition on December 1, 2023.

---

[15] ROA.001609.

[16] ROA.001633-001634.

[17] ROA.001631-001632.

**C.    Notice of Default, pending foreclosure, and $5.2 million discount.**

On August 3, 2023, Lender delivered to WROP, as guarantor, a notice of Appellant's default under the Loan Documents (the **Notice of Default**).[18] On October 1, 2023, the Note matured. Just over three weeks later, on October 24, 2023, Lender noticed Uptown Tower of a foreclosure sale to take place on December 5, 2023.[19]

After receiving the Notice of Default, it became clear to WROP that Appellant was in serious trouble.[20] Appellant proved incapable of paying the Note at maturity, let alone with accrued default interest, and could not refinance its Note prior to the posted foreclosure sale date.[21] Foreclosure would destroy Appellant's equity in Uptown Tower, an outcome detrimental to Appellant, its creditors, the Partnership, and both WROP and Pillarstone.[22]

---

[18] ROA.001547-001549.

[19] ROA.001552-001561.

[20] *See* ROA.000577-000580 at 109:15-112:25.

[21] ROA.000541 at 73:2-8, ROA.000558 at 90:12-23.

[22] ROA.000515 at 47:7-13, ROA.000525 at 57:23-25.

By early November, WROP began working hard on a solution that would (i) resolve Appellant's inability to satisfy the Note, and (ii) prevent foreclosure.[23] WROP assessed the Demand Letter and identified weaknesses in Lender's demand for payment of retroactive default interest.[24]

On November 13, 2023, WROP's CEO Dave Holeman engaged in a lengthy conference call with Dennis Chookaszian, an officer and trustee of Pillarstone, which managed the Partnership and, in turn, Appellant.[25] During their call, Mr. Holeman outlined his proposed plan to negotiate a discounted payoff under the Note, which WROP would fund in full.[26] Mr. Holeman asked if the Partnership, as Appellant's member, would support the position and Mr. Chookaszian agreed it would.[27] WROP prepared the joint letter and engaged in negotiations with Lender about a reduced payoff.[28]

---

[23] *See* ROA.000513-000514 at 45:14-46:24.

[24] ROA.001590–001593.

[25] ROA.001562; *see* ROA.000513-000514 at 45:20-46:09.

[26] *See* ROA.000513-000515 at 45:20-47:02.

[27] *See* ROA.000513-000514 at 45:20-46:19.

[28] ROA.001590-001593.

On November 17, 2023, Lender issued a *Payoff Demand Statement* seeking a "Total Amount to Payoff Loan (the 'Payoff Amount')" of $18,807,792.01 (the **Payoff Demand**).[29] The Payoff Demand included more than $6.5 million in retroactively accrued default interest, and nearly $400 thousand dollars in other accrued interest and liquidation fees.

During the following weeks, WROP negotiated with Lender over the terms of its Payoff Demand and presented Lender with evidence supporting a material payoff reduction.[30]  By November 30, 2023, Lender had agreed in principle to the terms of a settlement which would dramatically reduce the Payoff Demand.[31] On December 1, 2023, Lender delivered a letter to WROP (the **December 2023 Settlement**) stating that as of December 4, 2024, the Payoff Demand due under the Note would total $18,887,773.10, but that the Lender:

> will accept a payment on or before 2:00 P.M. on December 4, 2023 in the amount of $13,632,764.25 (the "DPO Amount"),[32] in two separate wires (one to Lender and one to Jones Walker LLP) as set forth

---

[29] ROA.001399–001400, 001625-001626.

[30] ROA.001590-001624.

[31] *See* ROA.001402–001405, 001627–001630.

[32] Meaning the *Discounted Payoff Amount*, i.e., the amount required to satisfy ***all*** indebtedness due and owing under the Note.

below, and if that payment is timely made and Lender receives a countersigned version of this letter on or before 2:00 P.M., Lender will (a) cancel the foreclosure sale set for December 5, 2023; (b) execute a cancellation of the deed of trust securing the indebtedness owed under the Loan referenced above and execute all other documents necessary to terminate its security interests in the Property, and (c) deliver the documents referenced in (b) above to you.[33]

Lender also required, as party to the settlement, releases by Appellant, as Borrower, and WROP, as Guarantor. Unaware that WROP had been replaced as manager, or that Appellant was planning to file for bankruptcy relief late afternoon that same Friday, December 1, 2023, Dave Holeman executed the December 2023 Settlement on behalf of Appellant as its manager, and on behalf of WROP as Guarantor.[34] WROP then coordinated the timely payment of the amounts due under the December 2023 Settlement from funds under its control, because Appellant was financially incapable of satisfying Lender's demand.[35] By not later than Monday,

---

[33] ROA.001402, 001627.

[34] ROA.000523-000524 at 55:15-56:22.

[35] ROA.000541 at 73:02-20.

December 4, 2023, which was the very next business day, WROP remitted the payments due totaling $13,632,764.25 (the **Settlement Payment**.)[36]

> **D. Appellant covertly replaces WROP as manager, files bankruptcy, engages in fruitless and damaging litigation with Lender, obtains a worse settlement, which WROP funds, and seeks unjust enrichment through the disallowance of WROP's claim.**

Instead of participating in the December 2023 Settlement, Appellant covertly replaced WROP as manager on November 30, 2023 and filed for bankruptcy relief the next day, December 1, 2023 (the **Petition Date**).[37] Appellant's replacement of WROP as manager deprived WROP of authority to bind Appellant to the December 2023 Settlement. Unaware of its replacement as manager and determined to satisfy its obligations under the Settlement Letter, WROP paid the December 2023 Settlement Payment when due on December 4, 2023.[38] Given Appellant's intervening bankruptcy filing, Lender held WROP's December 2023 Settlement

---

[36] ROA.000284-000285.

[37] ROA.001631-1634, ROA.000050-000065.

[38] ROA.000284-000285.

Payment in suspense and the December 2023 Settlement was never effectuated.[39]

Instead of working to quickly ratify the December 2023 Settlement to ensure an expedited resolution of disputes with the Lender and a massively discounted payoff funded by WROP, Appellant engaged in months of litigation with the Lender.[40]  That unnecessary litigation caused Appellant to incur considerable costs and expenses litigating:

1. the Debtor's Motion to use Lender's cash collateral (Dkt. 6);

2. the Lender's Motion for Relief from Stay (Dkt. 74);

3. the Lender's Motion to Dismiss Bankruptcy Case (Dkt. 75);

4. the Lender's Motion for Adequate Protection (Dkt. 77);

5. the Debtor's Applications to employ special counsel (Dkts. 78, 89);

6. the Lender's Objection to the Debtor's proposed Disclosure Statement (Dkt. 185); and

---

[39] ROA.000288-000289 ¶8; *See* ROA.000542 at 74:17-20, ROA.000620 at 152:6-13.

[40] ROA.000045-49; *See* ROA.001679-001717.

7. the Debtor's Complaint filed against the Lender, among others, in Adversary Proceeding No. 24-03008....[41]

Eventually, Appellant, Lender, and WROP entered into a multi-party settlement agreement to resolve disputes about amounts due to satisfy the Note and resolve Appellant's litigation with Lender (the **Final Bankruptcy Settlement**).[42]   Appellant's settlement motion, (the **Settlement Motion**),[43] evidences the deleterious effects of Appellant's litigious behavior.  In addition to the costs and expenses incurred litigating with Lender, Appellant had to pay Lender *more money* to satisfy its claim under the Final Bankruptcy Settlement than it would have under the December 2023 Settlement.[44] Even so, the Final Bankruptcy Settlement offered a materially discounted payoff of Lender's claim.[45]  To ensure both Appellant and WROP realized its benefits, WROP agreed to the application of its Settlement Payment to effectuate the Final Bankruptcy Settlement.[46]

---

[41] ROA.000288 at ¶6.

[42] ROA.000288-000289 at ¶¶6–8.

[43] ROA.000286-309.

[44] ROA.000288–000289 at ¶8, ROA.000542 at 74:17-20.

[45] ROA.000288–000289 at ¶8, ROA.000292 at ¶13.

[46] ROA.000326–000328, ROA.000286–000294.

On April 9, 2024, WROP filed Proof of Claim No. 13 in the amount of $13,632,764.25, and sought subrogation to the rights of Lender under section 509 of the Bankruptcy Code.[47]  Appellant objected to WROP's subrogation claim.[48]  On October 2, 2024, the Bankruptcy Court heard argument, issued an oral ruling, and on October 18, 2024, executed its *Order Overruling the Debtor's Objection to Claim of Whitestone REIT Operating Partnership, L.P. (Claim No. 13).*[49]  Appellant appealed, commencing this bankruptcy appeal in the District Court.

**E.    The District Court correctly affirms the entirety of the Bankruptcy Court's ruling and Appellant seeks further review from this Court based on the same arguments.**

On August 12, 2025, the United States District Court for the Northern District of Texas, Hon. Brantley Starr (the **District Court**) ruled against Appellant and affirmed the Bankruptcy Court. The next day, Appellant appealed to this Court.

---

[47] ROA.000268–000283.

[48] ROA.000329–000338.

[49] ROA.000004–000008.

Appellant filed its Appellant's Brief on November 24, 2025, which is substantively identical to the brief it presented to the District Court and raises no new legal theories or authorities.

### F.    Subsequent developments in the Bankruptcy Court moot this appeal.

On October 18, 2025, well after Appellant commenced its further appeal to this Court (but before Appellant filed Appellant's Brief), WROP and the plan agent appointed in the Affiliate Bankruptcy Cases by the Bankruptcy Court sought approval to enter into a certain Settlement Agreement (the **Settlement Agreement**)[50] that results in the final distribution of all remaining funds to WROP. This includes all funds that will flow from Appellant's estate to the Partnership, as the Partnership is the only estate beneficiary under Appellant's own *Second Amended Plan of Reorganization* (the **Plan**).[51]

On December 10, 2025, the Bankruptcy Court approved the Settlement Agreement and entered its *Order Granting Plan Agent's Motion Pursuant to*

---

[50] Supp. ROA.000001-000010.

[51] ROA.000319; *See* ROA.000055.

*Federal Rule of Bankruptcy Procedure 9019 for Approval of Compromise Between Plan Agent and Whitestone REIT Operating Partnership, L.P.* (the **9019 Order**).[52]

## SUMMARY OF THE ARGUMENT

As the District Court correctly found, WROP is entitled to subrogation under the plain language of section 509 of the Bankruptcy Code because its actions satisfy each element for statutory subrogation and Appellant's objections were without merit. Further, even if section 509 were not dispositive, the Bankruptcy Court correctly ruled that the principle of equitable subrogation under Texas law also supports the Bankruptcy Court's order (an argument that the District Court did not even feel the need to reach on appeal because the first issue was so clear). The District Court correctly opined that there was no clear error with the Bankruptcy Court's factual findings and no legal error with its analysis. Appellee has not presented any new argument in its Appellant's Brief to show this Court that the District Court was incorrect. To the contrary, Appellant has merely regurgitated the exact same legal arguments and authorities to this Court without raising any new contentions as to why the District Court's holding

---

[52] Supp. ROA.000011-000014.

was in error. This Court should affirm the District Court in all respects for three reasons.

First, this Court has been deprived of subject matter jurisdiction by Appellant's loss of standing during the pendency of this appeal as a consequence of the Settlement Agreement entered pursuant to Federal Rule of Bankruptcy Procedure 9019 and approved by the Bankruptcy Court on December 10, 2025. Under the terms of that settlement, WROP is definitively entitled to all of the funds that form the basis of Appellant's complaints on appeal, depriving Appellant of standing and mooting all issues raised by this appeal.

Second, in the alternative (assuming this Court should find the existence of subject matter jurisdiction), WROP is entitled to subrogation under section 509 of the Bankruptcy Code. As the guarantor of Appellant's obligations under the Loan Documents, WROP is liable with Appellant (as the Debtor) on Lender's claim for payment against Appellant. WROP, as guarantor, agreed to the application of its Settlement Payment to the post-petition Final Bankruptcy Settlement approved by the Bankruptcy Court, which satisfied Lender's claim against Appellant and resolved WROP's Guaranty obligation. WROP was not the beneficiary recipient of the

Settlement Payment. WROP's actions satisfy each element for statutory subrogation under section 509 of the Bankruptcy Code. The Bankruptcy Court therefore correctly overruled Appellant's objection.

Third, and in the further alternative assuming section 509 were not dispositive, the Bankruptcy Court correctly held that the principal of equitable subrogation under Texas law further supports the Bankruptcy Court's order. If Section 509 does not provide the exclusive means for subrogation in a bankruptcy proceeding, then WROP established the requisite elements for equitable subrogation under Texas law by showing that Appellant was primarily liable for the debt and WROP paid that debt involuntarily pursuant to its Guaranty.

Appellant's arguments to the contrary rely on an obfuscation of case precedent outside the context of subrogation. Appellant focuses on a creditor's recourse against a guarantor *after* the primary borrower defaults on an underlying loan, ignoring copious precedent finding that a guarantor's satisfaction of an underlying borrower's claim is *precisely* the type of action giving rise to subrogation. Appellant has not established that any of the Bankruptcy Court's findings as to the balance of the equities was

clearly erroneous, and its arguments regarding WROP's alleged bad faith are not supported by the evidence and must therefore fail.

## STANDARD OF REVIEW

This Court reviews the decision of a district court, sitting in its appellate capacity, "by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re JPG Renewables, L.L.C.*, No. 25–20021, 2026 WL 75906, at *4 (5th Cir. Jan. 9, 2026) (quoting *In re Highland Cap. Mgmt.*, 57 F.4th 494, 499 (5th Cir. 2023)).

The bankruptcy court's conclusions of law, as well as any mixed questions of law and fact, are reviewed de novo. *Id.*

The bankruptcy court's findings of fact are reviewed for clear error. *Id.* "The bankruptcy court's opportunity to make first-hand credibility determines entitles its assessment of the evidence to deference by both the district court and this court alike." *In re JPG Renewables, L.L.C.*, 2026 WL 75906, at *4 (quoting *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003)). This Court will not "weigh the evidence anew." *Id.* Instead, it only determines "whether the evidence supports the bankruptcy court's findings" and will set those findings aside only if left with a "definite and firm conviction that a mistake

has been committed." *In re JPG Renewables, L.L.C.*, 2026 WL 75906, at *4 (quoting *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003)).

## ARGUMENT

### I.   This Court lacks subject matter jurisdiction because Appellant no longer has standing to prosecute this appeal.

"Because [this Court] may not proceed without requisite jurisdiction, it is incumbent upon [the Court] to constantly examine the basis of jurisdiction[.]" *Moler v. Wells*, 18 F.4th 162, 166 (5th Cir. 2021). "A lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 534 (5th Cir. 2017) (internal quotation omitted).

This Court applies the "person aggrieved" test to determine whether party has standing to appeal a bankruptcy court's order. *Matter of JFK Capital Holdings, L.L.C.*, 880 F.3d 747, 751 (5th Cir. 2018). Under that test, a party must show that it has been "directly and adversely affected **<u>pecuniarily</u>** by the order of the bankruptcy court in order to have standing to appeal." *Id.* (quoting *In re Coho Energy, Inc.*, 395 F.3d 198, 203 (5th Cir. 2004)) (emphasis added).

On October 18, 2025, well after Appellant commenced its further appeal to this Court (but before Appellant filed Appellant's Brief), WROP and the plan agent appointed in the Affiliate Bankruptcy Cases by the Bankruptcy Court sought approval to enter into the Settlement Agreement[53] that results in the final distribution of all remaining funds to WROP. This includes all funds that will flow from Appellant's estate to the Partnership, as the Partnership is the only estate beneficiary under Appellant's own Plan.[54]

On December 10, 2025, the Bankruptcy Court approved the Settlement Agreement and entered its 9019 Order.[55] Pursuant to section 3 of the 9019 Order, after satisfaction of Allowed Claims of the Subsidiary Debtors, "all remaining funds (the 'Partnership Estate Funds') shall flow to the Partnership Estate.[56] Section 6 of the 9019 Order then orders as follows, consistent with the Settlement Agreement:

> Distribution to WROP. Following the satisfaction of all the claims of the Subsidiary Debtors, and of the reserves set forth above, the Debtors shall distribute

---

[53] Supp. ROA.000001-000010.

[54] ROA.000319; *See* ROA.000055.

[55] Supp. ROA.000011-000014.

[56] Supp. ROA.000012.

> all funds remaining in the Partnership Estate to WROP as soon as reasonably practicable, and not later than 14-days after the entry of a Final Order by the Bankruptcy Court approving the 9019 Motion and Settlement Agreement, but in no event later than December 12, 2025.[57]

This entire appeal hinges on Appellant's complaint that WROP is allegedly not subrogated to the rights of the Lender as a secured claimant in the amount of $13,632,764.25 and that the Bankruptcy Court erred in overruling Appellant's objection to WROP's claim in the Bankruptcy Court.[58] But those issues are now fully mooted by the Settlement Agreement and the Bankruptcy Court's 9019 Order, which unequivocally and finally orders the payment of **all remaining funds in the Partnership Estate** to be distributed **to WROP**. In other words, even if Appellant somehow succeeded in this appeal and obtained a reversal of the Bankruptcy Court's prior order overruling the claim objection, it would not matter to the ultimate decision of who ultimately obtains the funds in dispute, because the entry of the 9019 Order means that those same funds would flow to WROP anyway.

---

[57] Supp. ROA.000005, Supp. ROA.000013.

[58] Appellant's Br. at 2–3, "Issues Presented" and 16, "Conclusion."

Notwithstanding Appellant's efforts to downplay this critical issue in its opposition to WROP's supplemental record submission, the Partnership's ultimate receipt of all funds in Appellant's estate is not news to Appellant. Appellant's own counsel described the flow of Appellant estate funds to the Partnership in her arguments before the Bankruptcy Court.[59] Appellant's counsel's statements on the record can only be interpreted as an acknowledgement that Appellant does not have any ultimate interest in any remaining estate funds in line with the Plan, and thus has no pecuniary interest in the outcome of this appeal.

In accordance with Appellant's own Plan, and as a result of the 9019 Order, Appellant can no longer show that it is "adversely affected pecuniarily" by the order on appeal before this Court (because a reversal of that order would still not result in any different pecuniary outcome in light of the 9019 Order distributing all remaining funds to WROP). This Court should therefore dismiss this appeal for lack of subject matter jurisdiction.

---

[59] *See* ROA.000603-000604, 135:21-136:06.

**II.    In the alternative, the Bankruptcy Court correctly held that WROP is entitled to statutory subrogation under Bankruptcy Code section 509.**

In its Appellant's Brief, Appellant argues that the Bankruptcy Court erred in granting WROP statutory subrogation under section 509 of the Bankruptcy Code for three reasons: (i) WROP executed an unconditional guaranty of payment which, according to Appellant, makes WROP primarily liable for Lender's claim against Appellant; (ii) WROP's Settlement Payment only partially paid Lender's claim against Appellant; and (iii) WROP initially intended to satisfy Lender's claim on behalf of both WROP and Appellant while acting as Appellant's manager, and so Appellant should be deemed to have issued the Settlement Payment in satisfaction of its own debt to Lender.[60]

Appellant's three statutory subrogation arguments should fail for three reasons. First, case law does not support Appellant's argument. Second, the express text of section 509 of the Bankruptcy Code allows subrogation for partial claim payments.  Third, section 509 of the Bankruptcy Code does not include any *intent* element, and the December 2023 Settlement

---

[60] Appellant's Br. at 6-16.

to which Appellant refers was *never effectuated* and so was not relevant to the Bankruptcy Court's analysis of WROP's section 509 claim.

### A.    WROP's guaranty did not make it the primary obligor of Lender's claim against Appellant under the loan documents.

In Appellant's first argument challenging the Bankruptcy Court's ruling, Appellant argues that WROP cannot satisfy the first element for statutory subrogation because it was not a co-obligor with Appellant—as Debtor—on a debt *primarily owed* by Appellant. Appellant's argument warrants a brief synopsis of statutory subrogation under Section 509 of the Bankruptcy Code.

Section 509 (a) allows guarantors like WROP "to step[ ] into the shoes of the creditor-beneficiary to assert the creditor-beneficiary's claim against the debtor-applicant." *In re Fresh Acquisitions, LLC,* Case No. 21-30721, 2024 WL 2232432 at *16 (Bankr. N.D. Tex. May 16, 2024) (J. Jernigan Report & Reco.) (internal quotations omitted). Section 509 (a) of the Bankruptcy Code ensures "guarantors become subrogated to the rights of the creditors they pay to *the extent of their payments.*" *Matter of Corland Corp.,* 967 F.2d 1069, 1077 (5th Cir. 1992) (emphasis added).

Section 509 (a) provides:

> Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509 (a). A party seeking statutory subrogation under the Bankruptcy Code must prove three elements: "(1) the entity is liable with the debtor on a claim against the debtor (§ 509 (a)); (2) the entity has paid all *or part of the claim* (§ 509 (a)); and (3) the entity did not receive the consideration for the claim (§ 509 (b))." *In re Fiesole Trading Corp.*, 315 B.R. 198, 203 (Bankr. D. Mass. 2004) (emphasis added); *see In re Northstar Offshore Group, LLC,* 628 B.R. 286, 305 (Bankr. S.D. Tex. 2020); *In re LTC Holdings, Inc.,* 10 F.4th 177, 186 (3d Cir. 2021) ("Section 509 (a) provides that a surety is partially subrogated to the rights of a creditor to the extent that the surety has made *any* payments (*i.e.,* short of payment in full)").

Regarding the first element of statutory subrogation, an entity is liable with a primary obligor under section 509 (a) when:

> [t]he entity is obligated to pay, by law or equity, on a claim of a creditor *against* the debtor." 4 COLLIER ON BANKRUPTCY ¶ 509.01[2] (Richard Levin & Henry J. Sommers eds., 16th ed.) (emphasis added). In other words, in order for subrogation to be available to the co-obligor under section 509, [ ] the debtor must be

> the party that in the eyes of the law is primarily liable
> for the indebtedness paid by the obligor.

*Northstar Offshore*, 628 B.R. at 306 (internal quotations omitted). Section 509 (a) "looks to the relationship between the debtor and the co-obligor in terms of which one received the *consideration* giving rise to the *joint obligation*." *Id.* (quoting 4 COLLIER ON BANKRUPTCY ¶ 509.02[2] (16th ed.)) (emphasis in original). The recipient of the consideration giving rise to the joint obligation is typically the primary obligor. *Id.* Logically, the recipient of loaned funds, evidenced by a note, is the primary obligor under the note.

Here, Lender filed Claim No. 9 against the Appellant in Appellant's bankruptcy case in the amount of $21 million on account of the Note and Loan Documents.[61] It is uncontroverted that the Appellant was the beneficiary of the loan proceeds as title holder to the Property purchased with the loaned funds.[62] Applying *Colliers'* analysis, as of the Petition Date

---

[61] ROA.000069 ("This claim is based upon the liability of the debtor, Whitestone Uptown Tower, LLC [ ], under a promissory note dated September 26, 2013 in the original principal amount of $16,450,000.00…"); ROA.000066-000071 (attachments omitted).

[62] ROA.000198-000251.

the Appellant was therefore the primary obligor as the beneficiary of the Loan evidenced by the Note.[63]

WROP was a co-obligor on "a claim of a creditor against the debtor," on account of its Guaranty, in satisfaction of the requirements of section 509 of the Bankruptcy Code.[64] *See* 11 U.S.C. 509 (a). It stands to reason that WROP could not have been primarily liable as guarantor because, regardless of the nature of its Guaranty, WROP could have no obligation to pay Lender's claim *but for* Appellant's default under the Note.[65]

Appellant attempts to deny WROP's right of subrogation by reclassifying WROP's Guaranty as the primary obligation to satisfy Lender's claim against Appellant.  Appellant's application of the law would render meaningless section 509 of the Bankruptcy Code, which is intended to prohibit a debtor from being unjustly enriched by a guarantor's satisfaction of a creditor's claim against the debtor.  *In re May*, No. 05-10521, 2006 WL 4458360, at *6 (Bankr. N.D. Ohio Aug. 14, 2006), *aff'd,* 368 B.R. 85 (B.A.P. 6th

---

[63] ROA.000072-000077.

[64] *See* ROA.000268–000283.

[65] *See* ROA.000274-000283, ROA.000619 at 151:08–11 (As stated by the Bankruptcy Court, "WROP as guarantor was secondarily liable with the debtor and had no obligation to pay the amounts due and owing under the note, but for the debtor's default.")

Cir. 2007) ("Without section 509, if a debtor received a discharge and if a codebtor paid a claim postpetition, any claim for…reimbursement…would be discharged and would leave the codebtor with no means of recovery. Thus, section 509 acts as a narrow, equitable backstop to ensure that a codebtor will receive some distribution (specifically the original creditor's distribution) from the debtor's estate…"); 4 COLLIER ON BANKRUPTCY ¶ 509.02[3] (16th ed.)) ("Section 509 operates as a narrow, equitable backstop to ensure that a co-obligor is entitled to whatever distribution would otherwise have gone to the creditor whose claim the co-obligor paid postpetition. The operation of the section, therefore, is grounded in fairness, leaving the estate in the same position as if it had paid the claim itself.")

Bankruptcy courts overwhelmingly recognize that section 509 applies to the classic situation in which a guarantor serves as a backstop to obligations primarily owed by a bankrupt debtor. *See In re Jones Truck Lines, Inc.*, 196 B.R. 123 (Bankr. W.D. Ark. 1996), *aff'd* 133 F.3d 922 (8th Cir. 1997) ("[guarantor's] [p]ostpetition payments on a guaranty entered into prepetition are eligible for setoff and are the exact type of payments contemplated by section 509(a)."); *In re Cornmesser's, Inc.*, 264 B.R. 159, 162 (Bankr. W.D. Pa. 2001) ("[a]n entity that is secondarily liable for a debt—e.g.,

a guarantor—falls within the scope of § 509 (a)"); *In re Fiesole Trading Corp.*, 315 B.R. at 205 (identifying a guarantor as a traditional category entitled to subrogation under section 509 (a)).

Appellant ignores the plain meaning of guarantor and applicable case law, choosing instead to rely on a Supreme Court of Texas case, *Bank of the West. v. PSMD Medical Associates, P.A.*, No. 02-23-00376-CV, 2024 WL 1924603 (Tex. App.—Fort Worth May 2, 2024, no pet.) to argue that WROP was primarily liable and paid its own debt. Appellant intentionally takes that case out of context to support its overtly illogical argument.

The *PSMD Medical* case involves a suit on a guaranty and does not address statutory subrogation or equitable subrogation. *Id.* at *1.  In *PSMD Medical*, the court addressed the fundamental nature of a guaranty. *Id.* at *2. The Supreme Court of Texas made clear that "[a] guaranty is a person's promise to perform an act that another person is contractually bound to perform." *Id.*  Put plainly, the *PSMD* Court confirmed that a guaranty gives rise to a co-obligation for a debt primarily owed by another.

Appellant ignores that portion of the ruling and instead focuses on the *PSMD* Court's acknowledgement that an unconditional guaranty allows a lender to sue a guarantor upon the borrower's default, without first

enforcing all rights and remedies against the borrower.[66] *Id.* The court's use of the term "primarily liable" must be considered in the context of the ruling: a lender seeking to enforce a guaranty *after a borrower's default* did not have to *first* seek recovery in full from the borrower before commencing suit against an unconditional guarantor. *Id.* Implicit in the court's ruling is an acknowledgement that even where an unconditional guaranty exists, a lender cannot sue the guarantor to satisfy the underlying borrower's debt if the borrower has not first defaulted.

In its ruling, the Bankruptcy Court addressed the primary versus secondary liability of a guarantor, even an unconditional guarantor, by citing to the well-reasoned decision *In re Wingspread Corp.* 116 B.R. 915 (Bankr. S.D.N.Y. 1990).[67] The *Wingspread* case involved a guarantor's payment of lease obligations in leases assigned during the guarantor's subsidiary's bankruptcy case. *In re Wingspread Corp.*, 116 B.R. at 928. The guarantor in *Wingspread* executed a guaranty with language that the guarantor unconditionally guaranteed the lessor for lessee's obligations

---

[66] Appellant's Br. at 7.

[67] ROA.000619 at 151:12-22.

under the lease. *Id*. at 927. After receiving notice of the lessee's default, the guarantor honored its guaranty and expressed concerns that, if the leases were later assumed and assigned in bankruptcy, a party may argue no cure was necessary. *Id*. The leases were subsequently assumed and assigned. *Id*. The assignee and trustee objected to the guarantor's subrogation claim and argued that the guarantor made the payments as a primary obligor, or to satisfy the primary obligations of its subsidiary. *Id.* at 928. The court determined that the guarantor was not primarily liable and therefore was not precluded from asserting its statutory right of subrogation where, after assignment, the lessee was primarily liable, and the guarantor was secondarily liable. *Id*.

The *Wingspread* opinion is unique in part because of the plain language used to convey the court's reasoning. The court reasoned that an "essential prerequisite to the right of subrogation is that the person seeking subrogation must have made a payment, or had his funds or other property applied, to discharge *another's* obligation." *Id*. at 928. Statutory subrogation

is therefore applicable when "a party pays a debt for some liability, not as a volunteer,[68] and for which another is primarily liable." *Id*.

Having heard Appellant's argument regarding *PSMD Medical* and considering it in the context of subrogation and the *Wingspread* opinion, the Bankruptcy Court reasoned that:

> "it" (sic) is true that the guarantor was directly liable to the creditor on its guaranty. But the relevant question in the subrogation context is not simply whether the party was directly liable, but rather whether its payment was used to satisfy another's obligation. The satisfaction of a guarantee…entails satisfaction of another's "obligation". Likewise, the Court finds that WROP paid a part of the lender's claim against the debtor, as 509 (a) allows.[69]

While the Lender could have and indeed did separately sue WROP to enforce the Guaranty, WROP's payment satisfied the <u>*Appellant's*</u> obligation under the Note. The Bankruptcy Court therefore correctly ruled that WROP was entitled to subrogation "to the extent of" its payment.

---

[68] As detailed below, the term "volunteer" simply means that the payor did not have a legal or equitable obligation to satisfy the outstanding debt. *Murray v. Cadle Co.*, 257 S.W.3d 291, 300 (Tex. App.—Dallas 2008); *See Argonaut Ins. Co. v. Rio Marine, Inc.*, 477 F. Supp. 3d 576, 584 (S.D. Tex. 2020) (explaining that a payment is involuntary for equitable subrogation purposes when paid pursuant to a legal obligation or to preserve rights or property).

[69] ROA.000619 at 151:14-22.

**B.     WROP's is entitled to subrogation for its Settlement Payment, even if the Settlement Payment did not satisfy the entirety of Lender's claim against Appellant.**

In Appellant's Brief, Appellant next argues that this Court's precedent affords a guarantor a right of subrogation under section 509 of the Bankruptcy Code only if the guarantor pays the lender's claim against the borrower-debtor in full.[70] Appellant's argument relies exclusively on inferences from this Court's ruling in *Matter of Corland Corp.*, 967 F.2d 1069 (5th Cir. 1992).[71]

In *Corland,* this Court recognized that under section 509 of the Bankruptcy Code, a guarantor that pays a creditor's claim steps into the shoes of the creditor "to the extent of their payments." 967 F.2d at 1077. Appellant argues that because the guarantor in *Corland* satisfied the borrower's claim in full, this Court tacitly ruled that only a guarantor who satisfies a borrower's claim in full is entitled to subrogation.[72]   In other words, Appellant argues that this Court ruled that "to the extent of their

---

[70] Appellant's Br. at 9.

[71] Appellant's Br. at 8-9.

[72] *Id*.

payments" under section 509 actually means "if the co-obligor paid the debtor's obligation in full."[73]

Appellant's argument warrants little response.  As Appellant agrees, the court in *Corland* restated the text of Section 509 (a) when issuing its ruling.  *Matter of Corland Corp.*, 967 F.2d at 1077.  It should have.  Courts within this Circuit are required to focus their examination on the express language of the statutes they are applying.  *See Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 262 (5th Cir. 2009) (stating that courts begin by examining a statute's language and, when the language is plain, courts enforce the statute's plain meaning unless absurd).

Appellant's entire argument, by contrast, hinges on an intentional manipulation of clear statutory language.  In section 509, the language "to the extent of such payment" entitles a guarantor to step into the shoes of the paid secured creditor even if the guarantor paid *less than the full amount* of the secured creditor's claim. *In Re LTC Holdings, Inc.*, 10 F.4th at 186; *In re Fiesole Trading Corp.*, 315 B.R. at 204; *In re Cornmesser's, Inc.*, 264 B.R. at 162. Any alternative reading would frustrate section 509 (c), which subordinate's

---

[73] *See Id.*

a party's subrogation claim to the pre-existing and partially satisfied creditor's "until such creditor's claim is paid in full…." 11 U.S.C. § 509 (c).

### C. There is no element of intent in section 509, and Appellant's argument to the contrary is in error.

In its next argument, Appellant claims that the Bankruptcy Court should have ruled that WROP's claim was ineligible for subrogation because, at the time of the December 2023 Settlement, WROP—acting as Appellant's manager—issued the Settlement Payment on Appellant's behalf, as borrower.[74]   Appellant's argument is a red herring, is irrelevant, and misstates the factual record.

As detailed above, during the months preceding Appellant's bankruptcy filing, WROP worked hard to negotiate a reduced payoff with Lender in an effort to minimize its Guaranty obligations, avoid foreclosure, and preserve the equity in Uptown Tower.[75]   On December 1, 2023, WROP believed it had secured a favorable resolution of all of Appellant's disputes with Lender, and executed the December 2023 Settlement on behalf of WROP as Guarantor, and on Appellant's behalf in WROP's role as

---

[74] Appellant's Br. at 10-11.

[75] *See* ROA.001590-001624 (detailed letter with attachments).

Appellant's manager.[76]   WROP learned later that it has previously been replaced as Appellant's manager, and so lacked authority to execute the December 2023 Settlement.[77]

Critical to this appeal and the Bankruptcy Court's ruling, the December 2023 settlement was therefore never effectuated.   The Final Bankruptcy Settlement was approved more than six months later by the Bankruptcy Court, involved different terms and conditions, an additional payor, and was executed by different parties.

When addressing Appellant's same argument, the Bankruptcy Court made clear in its oral ruling that any intent associated with a settlement that never took place is simply irrelevant:

> Likewise, those settlement funds, the ones that would have been paid under the December 1st letter, were never applied. That release that would have otherwise been effectuated under the December 1st letter was never effectuated. So the argument that the $13 million was made by WROP as a manager was vitiated by, number one, the debtor's post hoc amendment saying that they were removed on November 30th and, therefore, could not act on behalf of the borrower. And again vitiated because

---

[76] ROA.000431–000434 (unexecuted Settlement Letter), ROA.001627–001630 (executed Settlement Letter), ROA.000524-000526 at 56:08-58:23.

[77] ROA.000563-000564 at 95:20-96:01, ROA.001631–001634.

there is no question that post-petition, when the actual funds flowed, WROP was certainly out as manager. That issue was laid bare in this case time and time again.[78]

Similarly important, section 509 of the Bankruptcy Code does not include a *mens rea* component. *See* 11 U.S.C. § 509. Intent is not an element for subrogation. Appellant's focus on WROP's intent, especially with regards to the terms of a settlement agreement that was never effectuated, remains irrelevant.

Even it were relevant, Appellant's suggestion that WROP attempted in December 2023 to "pay the Loan as the primary obligor" is completely unsupported by the evidence.[79] As Mr. Holeman explained in his uncontroverted testimony, WROP at all times intended to and did issue its December 2023 Settlement Payment in its capacity as guarantor and not through its position as once-manager of Appellant.[80] It was WROP, not Appellant, that remitted the payments via wire transfer in an amount totaling $13,632,764.25.[81]

---

[78] ROA.000620 at 152:08-20.

[79] Appellant's Br. at 10.

[80] ROA.000541-000542 at 73:12-74:09.

[81] ROA.000528 at 60:11-25, 000541 at 74:09-20.

The Bankruptcy Court properly disposed of Appellant's argument and should be affirmed.

## III. In the further alternative, WROP is entitled to equitable subrogation.

### A.    Section 509 is not an exclusive subrogation remedy.

While Appellant does not *directly* argue that equitable subrogation is unavailable to WROP in addition, or in the alternative, to section 509, Appellant does contend that "the issue is far from settled" and suggests to this Court that "many cases, both state and federal, go in the opposite direction."[82] Appellant correctly notes that two Northern District of Texas cases have analyzed equitable subrogation claims alongside section 509.[83] But even more direct authority from another district within the Fifth Circuit holds that section 509 does not create an exclusive subrogation claim.

In the case of *In re Shavers*, the United States Bankruptcy Court for the Southern District of Mississippi entered a final judgment approving a

---

[82] Appellant's Br. at 11–12 and n.19 (collecting cases). Note that Appellant's statement in its "Issues Presented" that the Bankruptcy Court "erred in concluding that equitable subrogation does not apply" appears to be a mistake in phrasing. *See* Appellant's Br. at 3, 6, 11. While Appellant states it was *error* for the Bankruptcy Court to conclude that equitable subrogation "does not" apply, the substance of Appellant's Brief argues *against* the application of equitable subrogation in this case.

[83] Appellant's Br. at 12-13 n.20 (citing cases).

settlement that allowed certain real property (the **Bayou Residence**) to be administered by the chapter 7 trustee of John Shavers' (**Shavers**) bankruptcy estate. *In re Shavers*, 418 B.R. 589, 595 (Bankr. S.D. Miss. 2009). The trustee subsequently sold the Bayou Residence and deposited net sale proceeds with the clerk of the court pending a determination of the priority of claims between the cross-defendants. *Id*. JPMorgan Chase Bank, N.A., (**Chase**), as the successor to Shavers' loan by a deed of trust on the Bayou Residence,[84] sought to invoke *equitable subrogation* to move up the list of the estate's creditors and take first priority over certain proceeds.[85] *Id*. at 600–01, 604.

The bankruptcy court noted that, while Chase did not fall within the provisions of 11 U.S.C. § 509 so as to be entitled to statutory subrogation, this did not prevent Chase from seeking equitable subrogation:

> State law subrogation is distinguishable from statutory subrogation under 11 U.S.C. § 509 of the Bankruptcy Code. … *Section 509, however, is not*

---

[84] Long Beach Mortgage Company made a $500,000 loan to Shavers, secured by a deed of trust on the Bayou Residence. Washington Mutual Bank (**WaMu**) succeeded to the interests of Long Beach Mortgage Company for that loan, and Chase later purchased many of the assets of WaMu out of a receivership, including the servicing rights for the subject loan. *In re Shavers*, 418 B.R. at 597.

[85] Chase did not seek to subrogate the entire loan balance due ($498,967.11) but asked the Court instead "to bifurcate the lien priorities by giving first priority to the funds its loan replaced and fourth (or last) priority to the remaining outstanding loan balance. *In re Shavers*, 418 B.R. at 600.

> *exclusive authority for equitable subrogation in bankruptcy proceedings* and, therefore, does not preempt equitable subrogation under state law in other contexts.

*In re Shavers*, 418 B.R. at 604 *18 (emphasis added). "Because equitable subrogation is a state–law doctrine," the *Shavers* Court correctly stated that "whether equitable subrogation applie[d]" to Chase "presente[d] a question of Mississippi law[.]" *Id.* at 604.

Further, while Appellant contends "the Fifth Circuit has not addressed the issue"[86] directly, the Fifth Circuit has notably looked beyond the Bankruptcy Code to applicable state law when considering subrogation rights in bankruptcy cases. *Matter of Fields*, 926 F.2d 501, 504 (5th Cir. 1991) (applying a subrogation provision of the Texas Business and Commerce Code and Supreme Court of Texas precedent to hold that a surety, having paid Appellant's taxes, would be subrogated to all of the rights of the creditor, and holding that the 1978 adoption of the Bankruptcy Code "did not alter in any significant way, the bankruptcy law with respect to this issue") (citing *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985)); *In re Kizzee-Jordan*, 626 F.3d 239 (5th Cir. 2010) (applying Texas statutory

---

[86] Appellant's Br. at 12.

subrogation and holding that a third-party creditor that paid taxes on debtor's behalf was subrogated to the taxing authority).

Thus, even if WROP's satisfaction of Lender's claim against the Debtor fell outside the scope of section 509 of the Bankruptcy Code, WROP is alternatively entitled to equitable subrogation under Texas law.[87]

## B.    WROP satisfies both elements of equitable subrogation.

### 1.    Equitable subrogation under Texas law has only two elements.

Appellant correctly acknowledges the two elements of equitable subrogation under Texas law: "(1) the person whose debt was paid was primarily liable on the debt, and (2) the claimant paid the debt involuntarily." *Murray v. Cadle Co.*, 257 S.W.3d 291, 299–300 (Tex. App.—Dallas 2008).

Appellant *incorrectly* attempts to add additional elements that it claims are required by "the authority of this Court and other federal courts[.]"[88] But Appellant fails to realize that "equitable subrogation is a **state–law**

---

[87] *See* ROA.000621-000623 at 153:14-155:05.

[88] Appellant's Br. at 13; *id.* at 14 (citing cases).

**doctrine**," *In re Shavers*, 418 B.R. at 604 (emphasis added), and federal courts thus have no authority to impose any *additional* elements for its application.

As WROP explained to the Bankruptcy Court below,[89] Appellant's line of authorities for these supposed additional elements originates from a California state court opinion applying California law. *See In re East Texas Steel Facilities, Inc.,* 117 B.R. 235, 241 (Bankr. N.D. Tex. 1990) (citing *In re Kaiser Steel Corp.,* 89 B.R. 150, 152 (Bankr. D. Colo. 1988)) (relying on California cases ultimately tracing back to *Caito v. United California Bank*, 576 P.2d 466, 471 (Cal. 1978)). Respectfully, the *East Texas Steel* Court had no authority to create new elements for a claim arising under state law, and its citation to elements of California law has no relevance to the present case.

### 2.    Appellant, not WROP, was primarily liable on the Note.

"Texas guaranty law recognizes two distinct types of guaranty: a guaranty of collection, which is conditional, and a guaranty of payment, which is unconditional." *BBVA USA v. Francis*, 642 S.W.3d 932, 937 (Tex. App.—Houston [14th Dist.] 2022, no pet.). The distinction is relevant to a debt holder's method of collection in the event of default, as the maker "must

---

[89] ROA.001380 at ¶48 n.7.

be joined" to any legal action seeking collection against the former type of guarantor, while the latter is considered to be "primarily liable" in the sense that he "waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty." *Ford v. Darwin*, 767 S.W.2d 851, 854 (Tex. App.—Dallas 1989, writ denied). This is the context in which the guarantors were referred to as "primarily liable" in the authorities cited by Appellant.[90]

However, under either type of guaranty, a guarantor is not *primarily responsible* for making payments on the debt as they come due because that is the initial liability of Appellant. This is why the *423 Colony* case cited by Appellant still referred to a borrower as the "primary obligor" even though the guarantor was "primarily liable" in a collection sense. *423 Colony*, 2019 WL 2223579, at *2. "A guaranty of payment is an obligation to pay the debt when due **if the debtor does not**." *Francis*, 642 S.W.3d at 937 (emphasis added). "It requires no condition precedent to enforcement against the

---

[90] Appellant's Br. at 14 (citing *PSMD,* 2024 WL 1924603, at *2 (explaining that a guaranty of payment "does not require the creditor to first pursue the principal debtor" and that the guarantor is "primarily liable; he waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty.") and *423 Colony, Ltd. v. Indep. Executors of Estate of Kern*, No. 02–18–00032–CV, 2019 WL 2223579, at *2 (Tex. App.—Fort Worth May 23, 2019, pet. denied) (same)).

guarantor **other than a default by the principal debtor**." *Id.* (emphasis

added). As *East Texas Steel* correctly explained:

> the obligation of a guarantor is **secondary** while the
> obligation of an issuer is primary. In other words, the
> obligation of a guarantor depends on the existence of
> a primary obligation on the part of the [borrower].
> … Further, the obligation of a guarantor **cannot**
> **mature unless the principal debtor has actually**
> **defaulted**[.]

*In re East Texas Steel Facilities, Inc.*, 117 B.R. at 241 (emphasis added).

Indeed, Texas courts have expressly allowed guarantors to claim

equitable subrogation when paying off the original debtor's note for which

they were obligated under a guaranty. For example, in *Fulton v. Edge*, J.D.,

435 S.W.2d 263, 264 (Tex. App.—Waco 1968, writ ref'd n.r.e.). Edge leased

equipment from Raymond Fulton pursuant to a lease agreement that Fulton

assigned to a bank. 435 S.W.2d 263, 264 (Tex. App.—Waco 1968, writ ref'd

n.r.e.). Fulton guaranteed Edge's payment to the bank and, when Edge failed

to pay on time, Fulton was required to pay the bank the balance of the lease.

*Id.* Fulton reacquired the lease from the bank after paying it off and sued

Edge directly under the lease and, alternatively for reimbursement as a

subrogee. *Id.* The Waco Court of Appeals held that Fulton was not relegated

to merely his contractual rights against Edge but was "entitled to pursue his

subrogation rights as guarantor by virtue of having paid the obligation of Edge to the bank. … Having discharged the obligation of Edge under his liability as guarantor, Fulton [was] entitled to pursue his action for reimbursement against Edge as the <u>principal obligor</u>." *Id.* at 265 (emphasis added).

Similarly, in *Northwest Otolaryngology Associates v. Mobilease, Inc.*, 786 S.W.2d 399, 401 (Tex. App.—Texarkana Jan. 23, 1990, writ denied) Mobilease and Northwest entered into a lease agreement for a 1984 Maserati, and Mobilease (like Fulton) assigned the lease to a bank. 786 S.W.2d 399, 401 (Tex. App.—Texarkana Jan. 23, 1990, writ denied). Mobilease unconditionally guaranteed performance under the lease to the bank on behalf of Northwest. *Id.* When Northwest defaulted and the bank repossessed the Maserati, Mobilease paid off the bank pursuant to its guaranty agreement and took possession of the vehicle. *Id.* The court of appeals held that a subrogation theory was tried by consent and was sufficient to support a judgment in favor of Mobilease against Northwest for the difference between what it had to pay the bank under its guaranty agreement and what it recovered for the sale of the car. *Id.* at 402–03. The unconditional nature of the guaranty had no effect on Mobilease's right to

assert its subrogation claim, as Northwest was primarily liable for the satisfied debt. *See id.*

Here, as the maker of the Note, Appellant was the primary obligor with primary liability for the debt; any liability of WROP was secondary in that it was subject to Appellant's breach of its primary obligation. *Francis*, 642 S.W.3d at 937; *In re East Texas Steel Facilities, Inc.*, 117 B.R. at 241. Having paid Appellant's debt pursuant to its legal obligations under the Guaranty, WROP is entitled to subrogate its claim against Appellant. *See Murray*, 257 S.W.3d at 299–300; *Fulton*, 435 S.W.2d at 264; *Mobilease*, 786 S.W.2d at 401; *see also  Frymire Engineering Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 144 and n.15 (Tex. 2008) ("Equitable subrogation applies in every instance in which one person has paid a debt for which another was primarily liable" and citing Texas cases recognizing the subrogation rights of guarantors as an example).

### 3.    WROP paid the debt involuntarily.

For purposes of the second element "[a] volunteer is one who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own." *Murray*, 257 S.W.3d at 300 (internal quotations omitted); *Frymire*, 259

S.W.3d at 145. Stated another way, "payments are considered involuntary for the purpose of equitable subrogation when the payor makes them under a legal obligation or to preserve rights or property." *Argonaut Ins. Co. v. Rio Marine, Inc.*, 477 F. Supp. 3d 576, 584 (S.D. Tex. 2020). Courts are "liberal in their determinations that payments were made involuntarily." *Frymire*, 259 S.W.3d at 145.

Appellant contends that "[a]t the time of the payment there had been no demand by the Lender for payment on WROP's guaranty and WROP did not seek the consent of the Debtor or even inform the Debtor of the payment."[91] Appellant again focuses this Court on the December 2023 Settlement, which was never effectuated, instead of the Final Bankruptcy Settlement to which WROP's Settlement Payment was applied.[92]

---

[91] Appellant's Br. at 14.

[92] ROA.000530–000533; ROA.000620 at 152:01–20 (findings by the Bankruptcy Court that the December 1 letter was not fatal to the WROP proof of claim because, among other things, the settlement funds "were never applied," releases were "never effectuated," "the argument that the $13 million was made by WROP as a manager was vitiated by, number one, the debtor's post hoc amendment saying that they were removed on November 30th and, therefore, could not act on behalf of the borrower. And again vitiated because there is no question that post-petition, when the actual funds flowed, WROP was certainly out as manager. That issue was laid bare in this case time and time again."); *see* ROA.000286–000309 (*Debtor's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019[.]*) and ROA.000326–000328 (*Agreed Order Granting Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019* [.]). *See also* ROA.000501 at 33:10–12 (direct examination by Appellant's counsel asking Whitestone REIT's CEO, Dave Holeman,

Regardless, Appellant fails to explain how its allegations, even if true, are relevant to any of the foregoing factors for assessing voluntary payment.

It is clear that, under the Guaranty, WROP had a legal obligation to satisfy the Note after Appellant's default.[93] Moreover, at the time WROP initially remitted the Settlement Payment to Lender, Appellant faced a pending foreclosure that would potentially eliminate all of the equity in Uptown Tower to the detriment of Appellant (for which WROP believed at the time it was still a non-member manager) and the Partnership, in which WROP owned more than an 81.4% interest.[94] Later, WROP consented to the application of its money to the Bankruptcy Court approved settlement for similar reasons: resolving costly litigation with Lender; satisfying Lender's claim (which WROP guaranteed) at a discount; and preserving equity in

---

about a New York lawsuit filed against WROP on the Guaranty); ROA.000607 at 139:11–15 (closing argument by Appellant's counsel again acknowledging "a lawsuit in New York where [WROP] had been sued on the guarantee."). Contrary to Appellant's allegations, Lender provided WROP with notices of default prior to the December 2023 Settlement, and sued WROP on its Guaranty before Appellant, Lender, and WROP effectuated the Final Bankruptcy Settlement.

[93] *See* ROA.000274-000283.

[94] *See* ROA.000511 at 43:20–25, ROA.000513 at 45:14–19, ROA.001552–001561.

Uptown Tower.[95] Because WROP paid money to satisfy Lender's claim against Appellant pursuant to its own legal obligation as a guarantor and to preserve its own interests in property, its payment was involuntary for purposes of equitable subrogation.

### C.    The balance of equities favors WROP's equitable subrogation claim.[96]

Because equitable subrogation is by its nature an *equitable* remedy, some courts have required that, in addition to finding evidence of the foregoing elements, the trial court must also "balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation." *Murray*, 257 S.W.3d at 300. The Bankruptcy Court did so here:

> Finally, the Court also believes that equity as a factor also lends in favor of WROP being granted equitable subrogation rights. In the Court's view, it is simply not equitable to accept the benefit of over $13 million from an adversary and relegate it to equity. No party is being harmed by the allowance of a secured claim here. The Court's been told time and time again that

---

[95] *See* ROA.000286–000309 (*Debtor's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 [.]*) and ROA.000326–000328 (*Agreed Order Granting Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019* [.]).

[96] Appellant framed the balance of equities as a third issue in the appeal, though it is more appropriately considered as a component of Issue II.

> money will flow to equity. So no party is being
> harmed by this claim.
>
> And on the contrary, if the Court were to disallow
> the claim, I think that the debtor would certainly be
> unjustly enriched.[97]

Appellant fails to rebut **any** of these findings by the Bankruptcy Court and fails to show how the Bankruptcy Court's findings were clearly erroneous. *See Perez v. Peake*, 373 B.R. 468, 477 (S.D. Tex. 2007) (citing FED. R. BANKR. P. 8013 and *In re McDaniel*, 70 F.3d 841, 842–43 (5th Cir. 1995)). Instead, Appellant argues only that a series of alleged inequitable acts by WROP should have tipped the balance of equities against WROP.[98] Appellant presented no "evidence" in support of its equities argument other than self-serving allegations, which were rightly disregarded by the Court.[99]

On the contrary, the evidence established that Appellant remitted operating revenue to the Partnership (which could have otherwise been used

---

[97] ROA.000620–000621 at 152:21–153:06.

[98] Appellant's Br. at 15–16.

[99] Notably, the transcript excerpts cited by Appellant contain no testimony or other evidence that WROP's actions "undercut[] and jeopardize[ed] the Debtor's own negotiations with the Lender," that WROP's actions "caus[ed] much damage to operations," or that WROP had "no authority" to perform the actions about which Appellant complains. *See* Appellant's Br. at 15-16 (citing ROA. 158, 159, 164, 537, 548, 616, 619, 621, 622, 625, 630, 632, 633).

to satisfy Appellant's obligations under the Note) to fund losing arguments in a Delaware litigation that directly resulted from Pillarstone's breach of the implied covenant of good faith and fair dealing with WROP.[100] Then, rather than joining WROP in the December 2023 Settlement to preserve the value of the Uptown Tower property, Appellant engaged in seven months of fruitless litigation and lost well over a million dollars of estate assets securing a worse deal. As the Bankruptcy Court found:

> The debtor filed for bankruptcy. The debtor stopped this settlement in its tracks. The debtor made a conscious choice to stop the otherwise settlement for good, bad, or otherwise. Likewise, those settlement funds, the ones that would have been paid under the December 1st letter, were never applied. That release that would have otherwise been effectuated under the December 1st letter was never effectuated.[101]

Notwithstanding Appellant's self–imposed harm, WROP participated in Appellant's materially worse Final Bankruptcy Settlement and contributed more than $13.6 million to the satisfaction **in full** of Lender's claims against Appellant.[102]

---

[100] *See* ROA.001652–001678.

[101] ROA.000620 at 152:05–12.

[102] ROA.000521–000523 at 53:22–55:01; ROA.001402–001405.

The equities overwhelmingly support subrogation, as the Bankruptcy Court correctly found, and Appellant has not shown that the Bankruptcy Court's findings were clearly erroneous.

## CONCLUSION

For these reasons, as well as those articulated by the District Court's well–reasoned Memorandum Opinion and Order, WROP respectfully prays that this Court AFFIRM the District Court, in turn affirming the Bankruptcy Court's final order overruling Appellant's objection, and that this Court award WROP all other relief to which it may be entitled.

Dated February 20, 2026.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ Andrew Robertson*
    **John J. Kane**
    Texas Bar No. 24066794
    **Andrew D. Robertson**
    Texas Bar No. 24090845

901 Main Street, Suite 5200
Dallas, Texas 75202
Tel: 214.777.4270
Fax: 214.777.4299
jkane@krcl.com
drobertson@krcl.com

*Counsel for Appellee*
*Whitestone REIT Operating*
*Partnership, L.P.*

## CERTIFICATE OF SERVICE

As required by FED. R. APP. P. 25, I certify that on February 20, 2026, I electronically filed the foregoing and served it on the following counsel of record via the Court's ECF system:

**Joyce W. Lindauer**
JOYCE W. LINDAUER ATTORNEY, PLLC
117 S. Dallas Street
Ennis, Texas 75119
joyce@joycelindauer.com

*Counsel for Appellant*

　　　　　　　　　　　　*/s/ Andrew Robertson*
　　　　　　　　　　　　Andrew D. Robertson
　　　　　　　　　　　　*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

As required by FED. R. APP. P. 32(g)(1) and 5TH CIR. R. 32.3, I certify that:

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the partes of the document exempted by FED. R. APP. P. 32(f), and 5TH CIR. R. 32.1, this document contains <u>10,231</u> words (including footnotes) as calculated by the word-count function of Microsoft Word.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Book Antiqua, with footnotes in 12-point Book Antiqua.

*/s/ Andrew Robertson*
Andrew D. Robertson
*Counsel for Appellee*
